**UNITED STATES of America, Appellee,**

v.

**Raymond Leon CURRIER,
Defendant, Appellant.**

**No. 86–2131.**

United States Court of Appeals,
First Circuit.

Heard Sept. 15, 1987.

Decided Dec. 10, 1987.

**12**

Murrough H. O'Brien, Portland, Me., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Paula D. Silsby, Asst. U.S. Atty., Portland, Me., were on brief, for appellee.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal from a conviction after a jury trial in the United States District Court for the District of Maine for distribution of valium, a schedule IV controlled substance, in violation of 21 U.S.C. § 841(a)(1). Appellant alleges two grounds for overturning the conviction. First, he asserts that the court erred in rejecting his claim that the indictment should be dismissed under the Interstate Agreement on Detainers Act, 18 App. U.S.C. § 1. Second, he argues that the court erred, under Federal Rule of Evidence 403, by admitting a tape recording that was unfairly prejudicial. We affirm the conviction.

*Facts*

On May 1, 1986, the district court unsealed an indictment in two counts against the defendant. Count I charged possession of a firearm by a convicted felon, in violation of 18 App.U.S.C. § 1202(a)(1); and Count II charged knowing and intentional distribution of valium, a schedule IV controlled substance, in violation of 21 U.S.C. § 841(a)(1). The defendant was in the Cumberland County Jail in Portland, Maine, at the time that the indictment issued, waiting to be sentenced on state charges for which he had been convicted on March 12, 1986. Pursuant to a writ of habeas corpus ad prosequendam (writ) issued by the district court on May 6, the defendant appeared for arraignment on May 9. Because he had no counsel, the

court rescheduled arraignment for May 16. The United States Marshal returned the defendant to the Cumberland County Jail on May 9 and handed a document entitled "DETAINER" to a prison official. The document was on a form that described the actions to be taken by the official who received the document and had custody over the prisoner named on it. The document contained the name and address of the sheriff of the Cumberland County Jail, the name and signature of the United States Marshal, and identifying information about the defendant. *See* Appendix.

On May 16, pursuant to another writ, the defendant appeared again in federal court, where after arraignment, he entered a plea of not guilty. On June 10, the court granted the defendant's motion for relief from prejudicial joinder of Counts I and II, and set separate trial dates for each of the two counts. The trial on Count I began on July 14. The defendant appeared pursuant to a writ issued on July 11 to the warden of the state prison in Thomaston, Maine, where the defendant had been sent on June 18 after being sentenced on the state conviction. On July 17, the jury returned a verdict of guilty on Count I. That same day, when a United States Marshal returned the defendant to the state prison in Thomaston, he gave a document entitled "DETAINER" to a prison official. This document, dated July 17, 1986, was on the same form described above. It contained the name and address of the warden of the state prison in Thomaston, the name and signature of the United States Marshal, and identifying information about the defendant. It also had typed across the top the following information: "Up–Date Info: Found Guilty-All Counts." *See* Appendix.

The court had the defendant removed from state prison pursuant to a writ on three additional occasions. The first of these writs, issued on September 8, produced defendant for sentencing on Count I; the second, issued on October 20, produced defendant for jury selection for the trial on Count II; and the third, issued on October 23, produced defendant for trial on October 24. The trial on Count II took only one day. The government offered as evidence a tape recording of a conversation that the defendant had with a government agent on January 10, 1986, when the defendant allegedly sold the agent 500 tablets of valium. The jury returned a verdict of guilty.

Seventeen days later, on November 10, the defendant moved to vacate the judgment and dismiss Count II of the indictment for violation of Article IV(e) of the Interstate Agreement on Detainers Act (Agreement). The court denied the motion on November 19 on the ground that the defendant had "waived his opportunity to have this argument considered" by waiting "until the completion of his trial and the rendering of a guilty verdict against him, more than a month after the incident complained of, before raising the issue." The defendant was sentenced on December 12. This appeal followed.

*The Interstate Agreement on Detainers Act*

The Agreement is a compact among forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. First drafted in 1956 by the Council of State Governments, it was adopted by Congress in 1970 on behalf of the United States and the District of Columbia and by the state of Maine in 1971. *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985); *United States v. Mauro*, 436 U.S. 340, 350–51, 353, 98 S.Ct. 1834, 1842–43, 1843–44, 56 L.Ed.2d 329 (1978); *Me.Rev.Stat.Ann.* tit. 34, § 1411 (1978 & Supp.1986). Because it is a congressionally sanctioned interstate compact within the compact clause, U.S. Const., art. I, § 10, cl. 3, the Agreement is a federal law subject to federal construction. *Carchman*, 473 U.S. at 719, 105 S.Ct. at 3403. The purpose of the Agreement is to create a good rehabilitative environment for prisoners serving sentences in one state by facilitating the speedy disposition of charges pending against them in another state.[1] The Agreement establishes two

---

1. Article II(a) of the Agreement defines a "state" to include a state of the United States, the United States of America, a territory or possession of the United States, the District of Columbia,

procedures for disposing of such charges. The first, contained in Article III, mandates that prison authorities notify a prisoner of any detainers placed against him, and inform him of his right under the Agreement to demand a speedy trial on the indictment giving rise to the detainer. Once the prisoner makes such a request, the state issuing the detainer must begin the trial within 180 days. The second procedure, described in Article IV, allows prosecuting officials in the state issuing the detainer to obtain temporary custody of the prisoner upon written request to appropriate authorities in the incarcerating state. The requesting state must bring the prisoner to trial within 120 days of such removal and must not return the prisoner before completing the trial. If a court determines that a requesting state has failed to comply with any of the above conditions, it must dismiss the indictment, information, or complaint with prejudice.[2]

Appellant argues that the government violated Article IV(e) of the Agreement by repeatedly taking him into federal custody and returning him to custody of the state of Maine without disposition of the Count II charge pending against him.[3] Specifically, appellant contends that federal officials triggered application of the Agreement when, after issuing detainers against him, they used writs to make a "written request for temporary custody" under Article IV(a).[4] The documents relied upon are the two entitled "DETAINER" given to Maine

prison authorities on or about May 9, 1986, and on July 17, 1986.

■ Appellant is correct in asserting that once a detainer is lodged against a prisoner, any subsequent writ issued against that same prisoner is a "written request for temporary custody" under the Agreement. *Mauro*, 436 U.S. at 361–64, 98 S.Ct. at 1848. Therefore, any one of the five writs used to bring appellant into federal court after the issuance of the first "detainer" on approximately May 9 could arguably have triggered the prohibition of Article IV(e). We find the relief offered under the Agreement inapplicable to appellant's case because neither the May nor the July 17 document brought appellant within the ambit of the Agreement. We do not consider the question of whether appellant has waived his right to invoke the Agreement by not raising the issue until after his conviction on Count II. We are especially reluctant to consider waiver here because the record is not clear as to whether appellant was even aware, until after conviction on Count II, that the July 17 "detainer" had been issued against him. *United States v. Lawson*, 736 F.2d 835, 838–39 (2d Cir.1984); *United States v. Cyphers*, 556 F.2d 630, 635 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977). Courts have found waiver in a number of cases, but defendants in those cases either knew that a detainer had been placed against them, *United States v. Rossetti*, 768 F.2d 12, 19 (1st Cir.1985); *United*

and the Commonwealth of Puerto Rico. *Mauro,* 436 U.S. at 353–56, 98 S.Ct. at 1843–45.

2.  Article IV(e) of the Agreement provides that if trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment ..., such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.
    Article V(c) provides similar relief to a defendant who is not brought to trial on an indictment pending in another jurisdiction within 180 or 120 days, the periods specified in Articles III and IV, respectively.

3.  Appellant also contends that his claim under the Agreement reaches Count I of the indictment. Yet appellant himself requested that

Counts I and II be tried separately. Appellant's conviction under Count I, was affirmed in a separate appeal, *United States v. Currier,* 821 F.2d 52 (1st Cir.1987). He presented no such claim in that appeal, and he never presented any such claim to the district court. Therefore, we need not concern ourselves with this argument.

4.  Article IV(a) provides that the
    appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available ... upon presentation of a written request for temporary custody. . . .

*States v. Eaddy,* 595 F.2d 341, 342 (6th Cir.1979), or requested movement from one state to another in direct violation of the Agreement, *United States v. Odom,* 674 F.2d 228, 229–30 (4th Cir.), *cert. denied* 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982); *United States v. Ford,* 550 F.2d 732, 742 (2d Cir.1977), *aff'd sub nom. United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

"A detainer is a formal notification, lodged with the authority under which a prisoner is confined, advising that the prisoner is wanted for prosecution in another jurisdiction." *United States v. Kenaan,* 557 F.2d 912, 915 (1st Cir.1977), *cert. denied,* 436 U.S. 943, 98 S.Ct. 2844, 56 L.Ed.2d 784 (1978); *see Carchman,* 473 U.S. at 719, 105 S.Ct. at 3403; *Mauro,* 436 U.S. at 358–59, 98 S.Ct. at 1846–47. The congressional committee recommending passage of the Agreement noted that a detainer seriously disadvantages the prisoner against whom it is lodged. Prison officials consider such a prisoner ineligible for desirable work assignments. And the prisoner himself "sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing." *Senate Committee on the Judiciary, Interstate Agreement on Detainers Act,* S.Rep. No. 1356, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Admin. News 4864, 4866. In *Mauro,* the Supreme Court recognized this problem when it concluded that writs were not detainers under the Agreement. Unlike a writ, the Court wrote, which requires the immediate presence of a prisoner,

> a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison.... Before it was made clear that a prosecuting authority is not relieved of its obligation to provide a defendant a speedy trial just because he is in custody elsewhere, detainers were allowed to remain lodged

against prisoners for lengthy periods of time, quite often for the duration of the prisoner's sentence.

*Mauro,* 436 U.S. at 358–59, 98 S.Ct. at 1846 (citation omitted).

■ The main reason for the Agreement, then, was to improve the rehabilitative environment for the prisoner by alleviating his uncertainty about *future* prosecutorial actions to be taken against him. A document that notifies an incarcerating state that a prisoner has been convicted or cleared of charges in another state does not create this uncertainty, however, and therefore is not a detainer within the meaning of the Agreement. *Kiendra v. Hadden,* 763 F.2d 69, 71 (2d Cir.1985). The Agreement itself makes this point especially clear by specifying that the detainers at issue are ones "based on *untried* indictments, informations, or complaints." Article I (emphasis added); *Carchman,* 473 U.S. at 724–26, 105 S.Ct. at 3405.

■ The July 17 document entitled "DETAINER" did not give notice that appellant was wanted for future prosecution in another jurisdiction. In contrast, it stated that the prosecution had ended with a finding of guilty on all counts. Appellant in fact had not been convicted on Count II—that trial would begin in October—but only on Count I. This inaccuracy, however, does not control the outcome of our inquiry into whether the document was a detainer. *Johnson v. Williams,* 666 F.2d 842 (3d Cir.1981). We find that, despite the incorrect statement that the defendant had been found guilty on all counts, the July 17 document was sent to convey information about the recently completed trial in which the defendant had been found guilty on Count I. As such, it was not a detainer within the meaning of the Agreement.

■ The document issued on or about May 9 presents a closer question than does the July 17 document. This first "detainer" contains far too little information to conclude decisively that the government sent it to give notice of pending charges against appellant. We recognize, however, that the circumstances giving rise to the

document were sufficiently ambiguous to suggest the opposite conclusion as well: when one state sends to another state a paper entitled "DETAINER" that has on it identifying information about a prisoner in that other state, the state sending the paper creates the impression that it means to give notice of charges placed against the prisoner. We need not resolve what the May document meant, however, because even assuming that it was intended to give notice of pending charges, appellant's claim fails. The terms of the Agreement apply exclusively to prisoners who are actually serving their sentences, and not to pretrial detainees. *United States v. Reed*, 620 F.2d 709, 711–12 (9th Cir.), *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980); *United States v. Harris*, 566 F.2d 610, 613 (8th Cir.1977); *United States v. Roberts*, 548 F.2d 665, 770–71 (6th Cir.), *cert. denied*, 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246 (1977). Nor does it apply to those who have been convicted but not yet sentenced. *Crooker v. United States*, 814 F.2d 75, 77–78 (1st Cir.1987); *United States v. Wilson*, 719 F.2d 1491, 1494–95 (10th Cir.1983). As this court recently noted: "[t]he basic purpose of the [Agreement] is to prevent interference with institutional care and rehabilitation, and one cannot interrupt that which has not yet started." *Crooker*, 814 F.2d at 77. Appellant was not even sentenced on the state charges for which he had been convicted until June 18, 1986. We conclude, therefore, that the first "detainer" did not trigger the prohibition of Article IV(e) because when the document issued in May, appellant had not yet begun serving his state sentence.

### The Evidentiary Ruling

Appellant contends that the district court erred under Fed.R.Evid. 403 by allowing the jury to hear a tape recording that was unfairly prejudicial. The recorded conversation was between appellant and a government agent just prior to and after the alleged valium sale, on January 10, 1987.[5] The sale itself allegedly took place at the end of the meeting, when, after saying "before I forget," the agent handed appellant money in exchange for the valium. Except for these few words, the conversation made no reference to valium, but focused instead on appellant's sale of weapons and other drugs. Repeatedly throughout the conversation, appellant used expletives and once he made a sexually explicit reference to parts of the female anatomy.

The defendant objected to the introduction of the tape during trial under Fed.R. Evid. 403.[6] The court listened to a significant portion of the tape, reviewed the entire transcript of the tape, and heard arguments of counsel on the admissibility of both the tape and the transcript. Satisfied that it was not unfairly prejudicial, the court admitted the tape into evidence. The court also ruled that because the transcript was too riddled with excisions and inaccuracies to be useful, the jury would only have access to the tape itself during deliberations. Finally, the court gave a cautionary instruction: the jurors could not use the tape to "conclude that [the defendant] committed this offense, with which he is now charged, simply because he has in the past committed other acts for which you find [sic] to be bad or wrongful acts"; they could only use the evidence presented in the tape, "to show the existence of opportunity, plan [sic] motive or intent to commit the offense charged in the indictment."

■ The government argues that because appellant did not make a specific objection during trial under Fed.R.Evid. 404(b), any objection under this rule was not fully preserved for appeal. We agree

---

5. Appellant also objected under Fed.R.Evid. 403 to a tape recording of a conversation between the same agent and himself on December 7, 1986. During oral argument, however, appellant conceded that the parties had excised the prejudicial parts of that tape before presenting it to the jury. Accordingly, appellant withdrew his objection to the December 7 tape.

6. Fed.R.Evid. 403 provides:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

with the government that appellant should have objected to the tape under Fed.R. Evid. 404(b),[7] because the same revelations of "skullduggery" that formed the basis for his assertion that the tape was unfairly prejudicial could also have formed the basis for an additional assertion that the tape was offered only to show his bad character. But we do not agree that appellant's failure to make a specific objection under Fed. R.Evid. 404(b) forecloses this court from considering the evidence in light of that rule when appellant did make an objection under Fed.R.Evid. 403.

Fed.R.Evid. 403 and 404(b) usually, as here, go hand in glove. Fed.R.Evid. 404(b) describes a particular form of evidence that might create the "unfair prejudice" anticipated under Fed. R. Evid. 403. *See United States v. Currier*, 821 F.2d 52, 55–56 (1st Cir.1987); *cf. United States v. Saintil*, 753 F.2d 984, 989 n. 7 (11th Cir.), *cert. denied*, 472 U.S. 1012, 105 S.Ct. 2712, 86 L.Ed.2d 727 (1985). We will, therefore, review the district court's admission of the tape into evidence in accordance with Fed.R.Evid. 404(b), even though appellant failed to invoke this rule when objecting under Fed.R. Evid. 403. Review of the admissibility of the evidence under both rules is particularly justified here, because the district court responded to appellant's 403 objection by quoting Fed.R.Evid. 404(b) in its cautionary instruction to the jury. We now turn to the substantive analysis of the tape recording.

■ The initial question is whether the recording was probative—that is, relevant—for any purpose *other* than to show appellant's bad character or tendency to commit crime. *United States v. Zeuli*, 725 F.2d 813, 816 (1st Cir.1984); *United States v. D'Alora*, 585 F.2d 16, 20 (1st Cir.1978). We find that it was. First, the recording corroborated the testimony of the government's primary witness, the agent who bought the valium. The agent testified that when he arrived at appellant's house,

appellant showed him an assortment of drugs and drug implements, parts for guns, and cases of wine. He also testified that, while there, he purchased 500 tablets of valium from appellant. The agent then confirmed this testimony by identifying these same events while the government played the tape. Such corroborating evidence was clearly relevant for strengthening the primary evidence in the government's case. *United States v. Griffin*, 818 F.2d 97, 101 (1st Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987); *United States v. Moore*, 732 F.2d 983, 990 (D.C.Cir.1984).

Second, the recording helped to establish appellant's intent to commit the crime charged by establishing "a context which enabled the jury to evaluate whether the [defendant was] in fact, 'willing and able' to proceed with the drug sale." *Moore*, 732 F.2d at 987; *United States v. Kadouh*, 768 F.2d 20, 21 (1st Cir.1985); *United States v. Rivera–Sola*, 713 F.2d 866, 871 (1st Cir.1983). The tape showed that appellant was a seasoned drug trafficker who, by his own admission, had quantities of marijuana and cocaine for sale. Furthermore, it disclosed appellant boasting of his drug trafficking just prior to making the alleged sale of valium. The tape, therefore, brought out "bad acts" that were both close in time and of a strikingly similar nature to the crime charged. *Moore*, 732 F.2d at 988, 989; *United States v. Tisdale*, 647 F.2d 91, 92–93 (10th Cir.), *cert. denied*, 454 U.S. 817, 102 S.Ct. 95, 70 L.Ed. 2d 86 (1981); *D'Alora*, 585 F.2d at 20. "As such, they were closely intertwined with the charged offense ..., providing ... significant contextual material...." *Currier*, 821 F.2d at 55; *cf. United States v. Moreno Morales*, 815 F.2d 725, 740 (1st Cir. 1987), *cert. filed* (Sept. 1, 1987) (finding certain prejudicial evidence admissible because it was so "closely intertwined" with the acts charged); *United States v. Reyn-*

---

7. Fed.R.Evid. 404(b) provides:
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*olds,* 762 F.2d 489, 494 (6th Cir.1985) (finding references to possible future criminal activity admissible when intertwined with and part of evidence showing motive, scheme, and intent). As another court has said, "[t]he intent with which a person commits an act on a given occasion can many times be best proven by testimony or evidence of his acts over a period of time prior thereto, particularly when the activity involves a *continuous course of dealing."* *United States v. Harrison,* 679 F.2d 942, 948 (D.C.Cir.1982) (emphasis added). Here, the valium sale was part of a continuous course of drug dealing. The jury could have properly considered evidence of the conversation during the meeting between appellant and the government agent to evaluate whether appellant had the requisite intent to make the valium sale. The evidence, therefore, was probative for some purpose other than to show appellant's bad character or tendency to commit crime. *Zeuli,* 725 F.2d at 816.

Not all evidence with "special" probative value, however, is admissible. *United States v. Medina,* 761 F.2d 12, 15 (1st Cir.1985). The next question is whether this value is "substantially outweighed by the danger of unfair prejudice...." Fed. R.Evid. 403. In reviewing the balancing undertaken by the district court, we give great deference to the district court's judgment. We have consistently held that "[o]nly in exceptional circumstances will we reverse the exercise of a district court's informed discretion vis-a-vis the relative weighting of probative value and unfairly prejudicial effect." *Griffin,* 818 F.2d at 101–02; *see Moreno Morales,* 815 F.2d at 740; *United States v. Tierney,* 760 F.2d 382, 387 (1st Cir.), *cert. denied,* 474 U.S. 843, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *United States v. Kepreos,* 759 F.2d 961, 964 (1st Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). We

hold that the district court did not abuse its discretion by admitting the tape recording.[8]

The tape recording presented highly probative evidence. Not only did it corroborate the agent's testimony and help to establish appellant's intent to commit the crime, but it gave the jury the opportunity to identify the exact moment of the alleged valium sale. Unfairly prejudicial evidence is evidence having some quality that moves the jury to attribute to it excessive probative value. It is evidence that "triggers [the] mainsprings of human action [in such a way as to] cause a jury to base its decision on something other than the established proposition in the case." 1 *Weinstein's Evidence* § 403[03], 36–39 (1986) (citations omitted). *See also* Gold, *Federal Rule of Evidence 403: Observations on the Nature of Unfairly Prejudicial Evidence,* 58 Wash.L.Rev. 497, 506 (1983). That the recording disclosed appellant using expletives and sexually explicit language does not make it unfairly prejudicial. *United States v. Bright,* 630 F.2d 804, 814 (5th Cir.1980). Neither does the tape's discussion of drug trafficking: the jury could have reasonably inferred that one who was by his own admission selling marijuana and cocaine was selling valium as well. *Kadouh,* 768 F.2d at 21.

Unlike the evidence of appellant's conversational style and drug trafficking, however, the portion of the tape in which he described his weapons trafficking arguably created the unfair prejudice that Fed.R. Evid. 404(b) seeks to prevent. Yet even though the discussion involving weapons trafficking created *some* unfair prejudice, the discussion could not, in any light, be deemed to have created *substantial* unfair prejudice. It comprised too small a part of the recording to have any but a marginal effect upon the jury. *Cf. United States v. Watchmaker,* 761 F.2d 1459, 1472 (11th Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 917 (1986).[9] Finally,

8. Because we find that the court below did not abuse its discretion, we need not decide whether the admission of the tape recording—even if an error—was nonetheless harmless.

9. The fact that appellant had petitioned for and been granted relief from the prejudicial joinder

of Counts I and II buttresses our conclusion that the introduction of information about weapons trafficking—the Count I charge—into the trial for drug trafficking—the Count II charge—was, unfairly prejudicial to a minimal degree.

the district court mitigated the impact of the unfair prejudice, first by giving the jury clear and emphatic cautionary instructions immediately after the tape's introduction into evidence, *Griffin*, 818 F.2d at 102; *Kadouh*, 768 F.2d at 22, and then by refusing to allow the jury use of a transcript of the recording during deliberations.

Both of appellant's claims fail.

*Affirmed.*

APPENDIX

# DETAINER
(See USMM 622.04)

UNITED STATES MARSHAL

### P.O. BOX 349 DTS

PORTLAND, MAINE 04112

TO: SHERIFF CUMBERLAND COUNTY JAIL     DATE:
142 FEDERAL STREET
PORTLAND, MAINE 04112     SUBJECT: CURRIER, RAYMOND LEON
02442-036
D.O.B.06/13/52

Please accept this Detainer against the above-named subject who is currently in your custody.

When the subject is to be released from your custody, please notify this office at once so that we may assume custody if necessary. If subject is transferred from your custody to another detention facility, we request that you forward our Detainer to said facility at time of transfer and advise this office.

The notice requirements of the Speedy Trial Act of 1974 (P.L. 93-619) apply if the Detainer is based on pending Federal criminal charges which have not yet been tried. The notice requirement provisions do not apply to Detainers lodged for charges which have already been tried or for which no trial is required, such as parole revocation Detainers or sentencing Detainers. Further, the notice requirement provisions would not apply to Detainers lodged against prisoners who have not yet been sentenced at the time the Detainer is lodged. If there is an "X" mark in the following space, the notice requirements of the Speedy Trial Act apply and you are requested to give a copy of the Detainer to the prisoner and to complete the attached Form USM-17, NOTIFICATION REQUIREMENTS— SPEEDY TRIAL ACT, in duplicate, and return both copies of the Form USM-17 to this office with receipted copies 2 and 3 of this Detainer. ☐

Special instructions also apply when the Detainer is based on a warrant issued by the U.S. Parole Commission. If there is an "X" mark in the following space, please follow the instructions on the reverse of this form, acknowledge receipt on copies 2 and 3 of this Detainer and return them to this office in the enclosed self-addressed envelope. ☐

If there are no "X" marks in the above blocks, no further action is required except you are requested to give a copy of the Detainer to the Prisoner and to acknowledge receipt of this Detainer on copies 2 and 3 and return them to this office in the enclosed self-addressed envelope.

Very truly yours,

EMERY R. JORDAN

RECEIPT

Date:

Signed:

Title:

United States Marshal

BY: JAMES PUCKETT

5-SUSPENSE—USMS     **DETAINER**     FORMERLY LAA-121 FORM USM 16
(Rev. 8/23/77)
PRIOR EDITIONS ARE OBSOLETE
AND NOT TO BE USED

47

# DETAINER
### (See USMM 622.04)

UNITED STATES MARSHAL

P.O. BOX 349 DTS

PORTLAND, MAINE 04112

TO:
Warden,
Maine State Prison
Thomaston, Maine 04861

DATE: July 17, 1986

SUBJECT: RAYMOND LEON CURRIER
USM #: 02442-036
D.O.B. 06/13/52
UP-DATE INFO:
FOUND GUILTY-ALL COUNTS.

Please accept this Detainer against the above-named subject who is currently in your custody.

When the subject is to be released from your custody, please notify this office at once so that we may assume custody. If necessary, if subject is transferred from your custody to another detention facility, we request that you forward our Detainer to said facility at time of transfer and advise this office.

The notice requirements of the Speedy Trial Act of 1974 (P.L. 93-619) apply if the Detainer is based on pending Federal criminal charges which have not yet been tried. The notice requirement provisions do not apply to Detainers lodged for charges which have already been tried or for which no trial is required, such as parole revocation Detainers or sentencing Detainers. Further, the notice requirement provisions would not apply to Detainers lodged against prisoners who have not yet been sentenced at the time the Detainer is lodged. If there is an "X" mark in the following space, the notice requirements of the Speedy Trial Act apply and you are requested to give a copy of the Detainer to the prisoner and to complete the attached Form USM-17, NOTIFICATION REQUIREMENTS—SPEEDY TRIAL ACT, in duplicate, and return both copies of the Form USM-17 to this office with receipted copies 2 and 3 of this Detainer. ☐

Special instructions also apply when the Detainer is based on a warrant issued by the U.S. Parole Commission. If there is an "X" mark in the following space, please follow the instructions on the reverse of this form, acknowledge receipt on copies 2 and 3 of this Detainer and return them to this office in the enclosed self-addressed envelope. ☐

If there are no "X" marks in the above blocks, no further action is required except you are requested to give a copy of the Detainer to the Prisoner and to acknowledge receipt of this Detainer on copies 2 and 3 and return them to this office in the enclosed self-addressed envelope.

Very truly yours,

EMERY R. JORDAN

United States Marshal

By: _____

Michael A. Assad, CDUSM

RECEIPT

Date: _____

Signed: _____

Title: _____

5-SUSPENSE—USMS

# DETAINER

FORMERLY LAA-121 FORM USM 16
(Rev. 8/23/77)
PRIOR EDITIONS ARE OBSOLETE
AND NOT TO BE USED

Adm. Office. U.S. Courts — Blanchard Press. Inc., Boston, Mass.

LIQ