**Jorge L. BONILLA, Plaintiff, Appellant,**

v.

**YAMAHA MOTORS CORP.,
Defendant, Appellee.**

**No. 90–1811.**

United States Court of Appeals,
First Circuit.

Heard Oct. 10, 1991.

Decided Jan. 31, 1992.

Alvaro R. Calderon, Jr. with whom Law Offices of Alvaro R. Calderon, Jr., Hato Rey, P.R., was on brief, for plaintiff, appellant.

Jose Luis Ubarri with whom Law Offices of Benjamin Acosta, Jr., San Juan, P.R., was on brief, for defendant, appellee.

Before CAMPBELL, Circuit Judge, BROWN,* and BOWNES, Senior Circuit Judges.

JOHN R. BROWN, Senior Circuit Judge:

Jorge Bonilla brought this product liability action against Yamaha Motors Corpora-

* Of the Fifth Circuit, sitting by designation.

tion to recover for injuries he incurred in a motorcycle accident. Bonilla alleged that a design defect in the braking mechanism of Yamaha's FJ1100 motorcycle caused his accident.[1] After a nine-day jury trial, the jury found that a design defect did exist, but that this defect was not the proximate cause of Bonilla's accident.[2] Bonilla now appeals the judgment based on this verdict, asserting that the court erred by 1) permitting the defense to introduce evidence of Bonilla's prior and subsequent speeding tickets; 2) allowing Warner Riley to give expert opinion testimony; 3) refusing Bonilla an opportunity to rebut during closing arguments; and 4) failing to grant Bonilla a new trial based upon an alleged inconsistent verdict. We reverse based on the trial court's erroneous admission of evidence of Bonilla's speeding offenses.

### The Crash

On June 22, 1985, Jorge Bonilla was driving his 1984 Yamaha FJ1100 motorcycle on Road 187 in Isla Verde, Puerto Rico at a speed of approximately 50 or 60 miles per hour. As Bonilla attempted to negotiate a wide right turn, he lost control of the bike and crashed into a metal guardrail which divided the road. Bonilla testified that his brakes completely failed and ultimately caused his accident. At trial, Bonilla developed the theory that the motorcycle's braking system overheated and experienced vapor lock, resulting in complete failure due to frequent braking in heavy stop-and-go traffic.

Yamaha, on the other hand, refuted Bonilla's claim that the accident was caused by brake failure, and undertook to show that Bonilla's speeding was the sole reason for the crash. Yamaha's evidence warranted the potential inference that Bonilla was driving at an excessive speed,[3] in traffic that was not heavy, and on a defect-free, well-lighted road.

### (1) The Speeding Tickets

What this case begins and ends with is the trial court's admission of evidence of Bonilla's prior and subsequent speeding offenses. On cross-examination, Yamaha confronted Bonilla with a certified copy of his driving and offense record, which showed that Bonilla was fined for excessive speed in September, 1981, approximately four years prior to his accident, and again in April, 1987, about two years after his accident. The following exchange occurred on the first day of trial, June 5, 1990:

> MR. UBARRI [Yamaha's counsel]: Isn't it true, Mr. Bonilla, that prior to the occurrence of this accident you have been fined for speeding?
>
> MR. CALDERON [Bonilla's counsel]: Objection.
>
> THE COURT: Overruled.
>
> A: I don't recall.
>
> MR. UBARRI [Yamaha's counsel]: Mr. Bonilla, isn't a fact that even after the occurrence of this accident you had been fined for speeding?
>
> A: No.
>
> MR. CALDERON [Bonilla's counsel]: I object again for relevancy.
>
> THE COURT: Noted.

---

1. Yamaha concedes that it manufactured Bonilla's motorcycle. Bonilla was not the original owner, however, as he purchased it from Francisco Benitez, who in turn bought it from a Yamaha dealer in Puerto Rico.

2. Specifically, the jury rendered its verdict in its answers to special interrogatories, pursuant to F.R.Civ.P. 49(a):
   1. Was the defendant negligent in its design of the FJ100 (sic) motorcycle?
      ANSWER _X_ YES ___NO
   2. If your answer to question (1) is YES, then answer this question: was the defendant's negligence the proximate cause of plaintiff's accident and injuries?
      ANSWER ___YES _X_ NO

3. Did the motorcycle manufactured by defendant have a design defect at the time of its manufacture?
   ANSWER _X_ YES ___NO
4. If your answer to question number (3) is yes, then answer this question: did the design defect proximately cause plaintiff's accident and injuries?
   ANSWER ___YES _X_ NO
   Please proceed only if you have found against the defendant by answering YES to questions (2) or (4).

3. Bonilla does not dispute the fact that he was driving between 50 and 60 miles per hour in a 45 mile per hour zone.

(side bar discussion)

THE COURT: Ask your question.

MR. UBARRI [Yamaha's counsel]: Yes, Mr. Bonilla, isn't the document that I have shown you a certification from the Department of Transportation and Public Works pertaining to your record as a driver.

A: Yes, sir.

Q: Isn't also a fact, Mr. Bonilla, that according to this official certification issued by the Department of Transportation of Puerto Rico you were fined for excessive speed on two occasions? One prior to the accident and another one after the accident?

A: Yes, sir.

During the side bar, and again over Bonilla's objections,[4] the trial court made clear its reasons for allowing the questioning:

I will overrule the objection as to the speeding because if he is denying that, I think that is proper grounds for impeachment.... I will also allow you to confront him with the certification, specifically and limited to those two violations, 1981 and 1987 for excessive speeds.... He has denied ever having been fined for speeding. This is impeachment material to his denials.

In addition to the colloquy that took place before the jury, apparently the trial court admitted on the second day of trial,

June 6, 1990, Bonilla's certified driving record.[5]

Bonilla urges successfully that the trial court erred by permitting the oral testimony and admitting the documentary evidence concerning his speeding offenses. He contends that this evidence must have led the jury to the verdict conclusion that speeding, not the design defect, caused his accident.

### (a) *The Test for Error*

Under F.R.Evid. 103(a), this court must review a challenged evidentiary decision to determine whether (1) a substantial right of the party is affected, and (2) whether a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context.

### (b) *Timely and Specific Objection*

■ We deal initially with 103(a)'s second requirement that the objection be both timely and specific. The above exchange indicates that during cross examination, Bonilla objected to Yamaha's questions regarding Bonilla's speeding primarily on Rule 402[6] relevancy and Rule 403[7] undue prejudice grounds. Similarly, Bonilla timely objected to the admission of his driving record on the limited basis that this evidence was highly prejudicial.[8]

---

4. Again, Bonilla's objections were grounded solely upon relevancy and undue prejudice: "Your Honor, the '87 is two years after the accident. How can that be relevant.... I just want to make it clear for the record that I objected because I think it's highly prejudicial." Trial Tr., Vol. XIV at 3–4.

5. Bonilla's request for a Special Instruction to the Jury, filed with the court on June 8th, refers to the admission of the document on June 6. The record also indicates that evidentiary issues, including the Motions in Limine, were indeed heard by the court outside the presence of the jury on June 6. However, the trial transcript is totally devoid of any details of such a hearing, and the document is not attached as an exhibit in the record.

6. Rule 402 states in part: All relevant evidence is admissible, except as otherwise provided ... by these rules.... Evidence which is not relevant is not admissible.

7. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

8. Bonilla's request for a Special Instruction to the Jury read:

1. On the session on Wednesday, June 6, 1990 this Honorable Court admitted, over our strong objection, a certification of the Public Works Department showing that plaintiff Jorge L. Bonilla had received two speeding tickets, one three years before the accident involved in this case, and another approximately two years after.

2. We explained to the Court that this evidence is irrelevant, has no probative value and is highly prejudicial to the plaintiff.

All of these objections were made clear by Bonilla's later request for a Special Instruction to the Jury, which asked that the jury be instructed that evidence of prior or subsequent bad acts cannot be considered to determine that the plaintiff acted in conformity with such acts on the instant occasion, specifically citing F.R.Evid. 404(b).[9] This appeal presents Bonilla's principal contention that the trial court erred by permitting evidence of speeding violations based upon Rule 404(b).

Yamaha counters that because Bonilla did not mouth the words of Rule 404(b) or refer to it specifically by number at the time the evidence first came in, any later objection under this rule was ineffectual. In a nutshell, Yamaha argues that Bonilla's specific invocation of 404(b) in his request for a Special Instruction to the Jury came too late.

We recognize at the outset the well-established rule that an objection to the admission of evidence must be timely made by the party opposing the admission, or error is waived. *See U.S. v. Benavente Gomez*, 921 F.2d 378 (1st Cir.1990).[10] But as this court has stated before, Rules 403 and 404(b) go hand in glove, since 404(b) "describes a particular form of evidence that might create the 'unfair prejudice' anticipated under Fed.R.Evid. 403." *U.S. v. Currier*, 836 F.2d 11, 17 (1st Cir.1987).[11] We conclude that, under the circumstances

of this case, Bonilla's objections were sufficiently timely and specific to warrant review of the admission of Bonilla's speeding offenses under Rule 404(b).

### (c) 404(b) Test

Rule 404(b) stands for the central principle that evidence of other acts is not admissible to show bad character. Evidence of other acts may be admissible if presented for another purpose, however, such as to show motive, intent, knowledge, identity, etc. Yamaha does not suggest that Bonilla's speeding violations were probative of any of these elements. Clearly, they were not. Instead, Yamaha argues that the violations were relevant to Bonilla's credibility as a witness, and admissible for impeachment purposes under Rule 608(b).[12] Yamaha insists that once Bonilla denied the incidents of speeding, cross examination on the violations became fair game. This puts Yamaha in a no-lose position since Bonilla untruthfully answered questions that were flagrantly inadmissible. Nevertheless, Yamaha can not in this fashion transform inadmissibility into admissibility for impeachment purposes.

Rule 608(b) allows cross examination on particular instances of conduct by the witness if clearly probative of truthfulness or untruthfulness. This does not mean, however, that Yamaha had the right to question Bonilla about the 1981 and 1987 speed-

---

**9.** Rule 404(b) provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident....

**10.** In *Benavente Gomez,* although the defendant earlier objected to a toll record when it was used to refresh the recollection of a government witness and for impeachment, he failed to object at the time it was admitted. Because at least three pages of transcript were recorded before the defendant objected to the admission, we held that the objection came too late to preserve the objection for appeal.

**11.** In *Currier,* although the defendant was tried and convicted for distribution of valium, the

jury was permitted to hear a tape recording which focused on the defendant's sale of weapons and other drugs. The defendant objected to the tape at trial on the basis of F.R.Evid. 403. We reasoned that the same revelations of "skullduggery" could have formed the basis for the assertion that the tape was offered only to show bad character, as well as for the assertion that the tape was unfairly prejudicial, and found the defendant's Rule 403 objection sufficient to preserve error under Rule 404(b). *Id.* at 17.

**12.** Rule 608(b) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness credibility ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness....

ing violations simply in the hope that he would deny them, thus opening up the "red herring" for impeachment. *See Tigges v. Cataldo,* 611 F.2d 936 (1st Cir.1979).[13] Because Bonilla's past conduct was not, by itself, within the permissive uses of 404(b), the trial court abused its discretion in first, permitting cross examination on the violations, and later, in admitting the certified document, which showed without a doubt that Bonilla twice had been fined for excessive speed.[14]

### (d) *Harmful Error*

■ Under Rule 103(a), wrongful admissions must affect a substantial right in order to constitute reversible error. When evidence is charged to have been improperly admitted, any error is more likely to be found harmful, and thus reversible, where the evidence is substantively important, inflammatory, repeated, emphasized, or unfairly self-serving. S. Childress & M. Davis, 1 Standards of Review 239 (1986).

Without a doubt, the admission of evidence concerning Bonilla's speeding offenses was substantively important, inflammatory and highly prejudicial. Although the jury decided that the braking system on the FJ1100 motorcycle was defectively designed, it declined to find that this was the proximate cause of Bonilla's crash. After a close examination of the record, we are forced to conclude that evidence of Bonilla's speeding, both before and after the accident, may very well have tipped the scale against Bonilla and in Yamaha's favor, on its theory that speed, not design, was the author of Bonilla's injuries. If this evidence proved anything, it proved that a person who has twice been caught speeding is likely to have been speeding at the time in question, a connection which legal policy and Rule 404(b) strictly forbid. Because

the error was not harmless, we must reverse and remand for a new trial.

Since Bonilla will receive a new trial based upon the admission of evidence of Bonilla's speeding violations, we make only slight mention of his remaining points.

### (2) Expert Testimony

■ Bonilla contends that Yamaha's witness, Mr. Riley, should not have been permitted to give expert testimony regarding the cause of the accident because his tests were conducted under different circumstances.[15]

■ Generally, dissimilarities between experimental and actual conditions affect the weight, not the admissibility, of the evidence. *Robbins v. Whelan,* 653 F.2d 47, 49 (1st Cir.1981). In any event, Mr. Riley testified that his test was conducted in September, 1989, using a similar 1984 FJ1100 Yamaha motorcycle, in stop-and-go traffic and while the outside temperature was approximately 70 degrees. We hold that the trial court did not abuse its discretion in determining that the conditions were sufficiently alike.

### (3) No Time for Rebuttal

■ As is most often the case, the trial court granted each party equal time for closing arguments. Bonilla used all 45 minutes for the first part of his argument, failing to reserve time for rebuttal. The trial court was within its discretion by refusing to grant Bonilla more time for rebuttal.

### (4) Inconsistent Verdict Waived

■ Despite his lack of objection, Bonilla now complains that the verdict is inconsistent. We need not go further, since, in the First Circuit, a party waives inconsistency

**13.** We likewise held in *Tigges* that plaintiff's counsel had no right, under Rule 608(b), to question the defendant about a prior incident in the hope that he would give an answer contrary to his previous interrogatory answers. *Id.* at 939.

**14.** Rule 608(b) strictly prohibited Yamaha from proving Bonilla's speeding violations by use of extrinsic evidence.

**15.** At page 14 in his brief, Bonilla argues that Riley's accident reconstruction tests were performed under different temperatures and different traffic conditions, making the tests unacceptable for determining the cause of the accident.

if it fails to object after the verdict is read and before the jury is dismissed. *Austin v. Lincoln Equip. Assoc.*, 888 F.2d 934, 939 (1st Cir.1989) (quoting *McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 134 (1st Cir.1987)).

The trial court prejudicially erred, requiring a new trial. REVERSED and REMANDED.