This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Andrew J. Popalardo, appeals from his conviction for deception to obtain a dangerous drug following the denial of his motion to dismiss the charge.
The facts giving rise to this appeal are as follows. On October 3, 1996, the Lake County Grand Jury indicted appellant on two counts of deception to obtain a dangerous drug in violation of R.C. 2925.22. The indictment alleged that appellant used deception as defined in R.C. 2913.01 to obtain the drugs Soma and Tylenol #3 on or about July 20, 1996 in Madison Township, Ohio.
Subsequent to his indictment in Lake County, appellant began to serve a six to twelve month term of imprisonment on October 7, 1996 in the Erie County Prison in Erie, Pennsylvania. This prison sentence was for conduct in Pennsylvania that was unrelated to the offenses for which appellant was indicted in Lake County.
Upon being imprisoned, appellant inquired as to whether any detainers had been filed against him pursuant to the Interstate Agreement on Detainers (IAD). Officials at the Erie County Prison informed appellant that the Lake County Prosecutor's Office had filed a detainer against him. This notice was provided to appellant via Form I under the IAD.
On October 31, 1996, appellant sent notice of his place of imprisonment to the Lake County Prosecutor along with a request for the disposition of the detainer. This notification was executed on Form II under the IAD. Pursuant to this document, appellant requested the final disposition of all untried charges upon which detainers had been lodged against him by the state of Ohio. Appellant also consented to waive extradition to Ohio for the purpose of answering the charges and for serving any sentence imposed upon him in Ohio after the completion of his term of imprisonment in Pennsylvania. The required Certificate of Inmate Status (Form III) and Offer of Temporary Custody (Form IV) were also properly executed and attached to Form II.
On December 2, 1996, the Lake County Prosecutor accepted the offer of temporary custody in connection with appellant's request for the disposition of the detainer. This acceptance was conveyed to the Erie County Prison officials through Form VII under the IAD.
Subsequently, appellant was paroled from prison in Pennsylvania on February 3, 1997. His parole was predicated upon compliance with certain drug and alcohol conditions as supervised by the Erie County Adult Probation/Parole Department. The next day, February 4, 1997, the Lake County Sheriff's Department took custody of appellant and returned him to Ohio for the disposition of the pending charges. It is unclear, however, whether appellant was actually released from custody on February 3, 1997 or whether appellant was detained further until authorities from Lake County arrived the following day.
On February 5, 1997, appellant appeared in the trial court and pled not guilty to both counts of deception to obtain a dangerous drug as set forth in the indictment. Appellant also signed a written waiver of extradition. In this document, appellant was given permission to go to Pennsylvania, but he agreed to return to Ohio when duly instructed and waived his right to an extradition hearing in Pennsylvania.
On April 03, 1997, appellant filed a motion to dismiss the indictment pending against him. As grounds for the motion, appellant alleged that the state of Ohio did not abide by the terms of the IAD. Specifically, appellant claimed that since the Lake County Sheriff's Department did not take him into custody until the day after he was paroled, the state of Ohio failed to accept "temporary custody" for purposes of the IAD. According to appellant, Article V(c) of the IAD required the dismissal of the untried indictment based on the failure to accept temporary custody.
The state filed a brief in opposition to the motion to dismiss. On June 11, 1997, the trial court denied the motion on the basis that the state of Ohio had not violated the IAD because one hundred eighty days had not elapsed since appellant filed his request for the disposition of the detainer.
Thereafter, on October 1, 1997, appellant pled no contest to one count of deception to obtain a dangerous drug. On November 3, 1997, the trial court sentenced appellant to six months in prison and suspended his driver's license for a period of six months.
From this judgment, appellant filed a timely appeal with this court. He now asserts the following assignment of error:
 "The trial court committed reversible error when it denied defendant-appellant's motion to dismiss for the state's failure to abide by the Interstate Agreement on Detainers, R.C. 2963.30 et seq., thereby violating appellant's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution."
The IAD is an interstate compact to which Ohio and Pennsylvania are party states. In Ohio, the General Assembly has enacted the IAD at R.C. 2963.30. The stated purpose of the IAD is "to encourage the expeditious and orderly disposition * * * and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Article I.
Under the provisions of the IAD, there are two methods by which to initiate the return of a prisoner from a sending state to a receiving state for the purpose of disposing of detainers based on untried indictments, informations, or complaints.[1] The prisoner may commence the process pursuant to Article III or, alternatively, a prosecutorial authority may initiate the return under the auspices of Article IV.
When a prisoner initiates his or her own return under Article III, the prisoner must be brought to trial within one hundred eighty days after the prosecutor's office in the receiving state obtains the request for a final disposition of untried charges. However, when the prosecutor's office initiates the return of the prisoner pursuant to Article IV, a trial must be commenced within one hundred twenty days of the prisoner's arrival in the receiving state. Articles III(a) and IV(c);State v. Brown (1992), 79 Ohio App.3d 445, 448. Regardless of whether a request is initiated pursuant to Article III or Article IV, the appropriate authority in the sending state must offer to deliver temporary custody of the prisoner to the receiving state so that a speedy and efficient prosecution may be had on any untried indictments, informations, or complaints. Article V(a).
In the case sub judice, the process of disposing of the detainer was initiated by appellant pursuant to Article III. This triggered the one hundred eighty day period for holding a trial.
As stated previously, appellant filed his motion to dismiss the pending indictment on the basis that the state of Ohio failed to accept "temporary custody" while he was still imprisoned in Pennsylvania. According to appellant, dismissal was required under Article V(c). This provision of the compact reads:
 "(c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."
On appeal, appellant first contends that the trial court misconstrued Article V(c) because it denied his motion to dismiss solely on the basis that the one hundred eighty day period under Article III had not yet expired. The trial court's judgment entry did not address whether the state of Ohio failed to accept temporary custody of appellant despite the fact that he relied on that express argument in his motion to dismiss.
Appellant argues that Article V(c) contemplates two distinct scenarios wherein the trial court should dismiss an untried indictment, information, or complaint with prejudice: (1) when the appropriate authority refuses or fails to accept temporary custody of the prisoner; or (2) when an action based on the detainer is not brought to trial within the time period allowed in Article III or Article IV. Although ostensibly agreeing with this proposition, the state maintains that the prosecutorial authority in the receiving state simply has to comply with either alternative in order to prevent the dismissal of a charge. According to the state, the trial court properly overruled the motion to dismiss because the Lake County Prosecutor's Office complied with the one hundred eighty day requirement of Article III.
Upon review, we can not agree with the state's reading of Article V(c). This provision is not phrased in terms of how the receiving state can comply. Rather, its wording is directed to the trial court in the receiving state and presents the court with two different situations under which dismissal with prejudice is appropriate. Thus, we agree with appellant's interpretation of Article V(c).
It is not possible, however, to know whether the trial court properly construed Article V(c). Although its judgment entry only referred to the one hundred eighty day time period, the trial court may have implicitly ruled that the state of Ohio had accepted temporary custody of appellant, thereby obviating the need to address the custody issue directly in the entry.
The question of whether appellant was brought to trial within the period allowed under Article III is not in dispute. Instead, appellant's argument before the trial court and this court relates solely to the custody issue. We will limit our analysis accordingly.
From appellant's perspective, "temporary custody" as envisioned by the IAD requires the receiving state to assert custody over the prisoner while he or she is still incarcerated in the sending state. Appellant posits that the state of Ohio failed to accept temporary custody of him while he was still incarcerated in Pennsylvania, and the trial court should have dismissed the untried indictment pursuant to Article V(c).
It should be remembered that the Pennsylvania authorities conveyed the written Offer of Temporary Custody via Form IV on October 31, 1996. The Lake County Prosecutor accepted the offer by executing Form VII on December 2, 1996. Thus, appellant is really asserting that written acceptance of temporary custody is insufficient, and the receiving state must actually exert physical control over the prisoner while he or she is still imprisoned in the sending state.
We agree that "temporary custody" as that term is used in the IAD refers to the delivery of a prisoner from the sending state to the receiving state for purposes of disposing of any untried charges pending against the prisoner. A review of the plain language of the IAD reveals that the party states contemplated that the person against whom the detainer was lodged would still be serving a prison sentence in the sending state when the receiving state exercised temporary custody over that person.
The party states did not intend to include discharged prisoners within the scope of the interstate compact. State v.Thompson (1984), 19 Ohio App.3d 261, 264 ("The statute provides solely for the delivery of a prisoner to a receiving state; the time in which the prisoner must stand trial; and the procedure in which the receiving state is to return the prisoner to the sending state so that he can complete the prison term."). See, also, State v. Kaser (Oct. 15, 1998), Hancock App. No. 5-98-11, unreported, at 8, 1998 Ohio App. LEXIS 5096, citing UnitedStates v. Currier (C.A. 1, 1987) 836 F.2d 11, 16 (holding that the IAD applies exclusively to prisoners who are actually serving their sentences).
This court, however, disagrees with appellant's suggestion that Article V(c) still applies after the prisoner has served his or her sentence and has been released by the sending state. Once the prisoner is released from prison, the IAD is no longer applicable. Thompson, 19 Ohio App.3d at 264; see, also, Statev. Ramey (Mar. 14, 1996), Cuyahoga App. No. 69080, unreported, at 16, 1996 Ohio App. LEXIS 956 (reaffirming holding inThompson).
As mentioned previously, the record in the instant case does not indicate whether appellant was still incarcerated when he was taken into custody by the Lake County Sheriff's Department on February 4, 1997. Appellant may have been completely released from custody upon being paroled on February 3, 1997. Alternatively, the Pennsylvania authorities may have moved appellant to a local jail for holding purposes if they were aware that Lake County was intending to take him into custody the following day based on the pending detainer.
Under the latter scenario, appellant would have still been incarcerated when the Lake County authorities took him into custody on February 4, 1997. If so, then the state of Ohio accepted temporary custody of appellant for purposes of Article V(c), and dismissal of the pending charges in Lake County would have been inappropriate.
In his brief, appellant implies that the former scenario actually prevailed, to wit: that he was not incarcerated in any capacity on February 4, 1997. If this was the case, however, then the IAD did not govern after appellant was paroled in Pennsylvania on February 3, 1997. Appellant lost any benefits that had not yet accrued under the statute once he was released from prison. The trial court, therefore, would not have been compelled by Article V(c) to dismiss the untried indictment because the IAD was of no force or effect after appellant was paroled.
To hold otherwise would create a potential loophole that would encourage out-of-state prisoners to attempt to have untried indictments, informations, or complaints dismissed with prejudice in Ohio. Using the case at bar as an example, a prisoner in Pennsylvania could wait until just prior to the expiration of his prison term before filing a request for the disposition of a detainer lodged against him by the state of Ohio. Subsequently, the state of Ohio could send written acceptance of the temporary custody offer to the Pennsylvania authorities, but there might not be enough time to arrange to take actual physical custody of the prisoner before he is paroled or finishes serving his sentence. In such a situation, it makes no sense to allow the prisoner to invoke Article V(c) after his release from prison in al effort to quash the charges pending against him in Ohio.
In the present case, the IAD was inapplicable assuming that appellant was indeed released from prison in Pennsylvania on February 3, 1997 and not thereafter detained in any way. Appellant then acquiesced to being taken into custody by the Lake County Sheriff's Department on February 4, 1997. Upon being arraigned in the trial court in Lake County on February 5, 1997, appellant signed a written waiver of extradition allowing him to return to Pennsylvania until trial in exchange for waiving his right to an extradition hearing.
Hence, appellant was not entitled to a dismissal of the charges under Article V(c) for one of the following reasons: (1) either the state of Ohio accepted temporary custody of appellant on February 4, 1997 assuming he was still incarcerated in some capacity; or (2) the IAD no longer applied after February 3, 1997 when appellant was released from all custody in Pennsylvania. Regardless of which scenario transpired, the trial court did not err by denying appellant's motion to dismiss the indictment pursuant to Article V(c).
Based on the foregoing analysis, appellant's sole assignment of error is not well-taken. Accordingly, the judgment of the trial court is affirmed.
 ------------------------- JUDGE JUDITH A. CHRISTLEY
FORD, P.J., O'NEILL, J., concur.
[1] Article II provides in part that "sending state" means "a state in which a prisoner is incarcerated at the time that he initiates a request for final disposition[.]" By contrast, the "receiving state" is "the state in which trial is to be had on an indictment, information or complaint pursuant to Article III or Article IV[.]"