**James R. McISAAC, Plaintiff, Appellee,**

v.

**DIDRIKSEN FISHING CORP., et al., Defendants, Appellees.**

**Appeal of The WISE COMPANY, INC., Defendant, Appellant.**

**No. 86–1061.**

United States Court of Appeals, First Circuit.

Argued Oct. 10, 1986.

Decided Jan. 13, 1987.

Craig M. Brown, with whom Robert P. Powers and Melick & Porter, Boston, Mass., were on brief, for defendant, appellant.

Ronald B. Horvitz, Gloucester, Mass., for plaintiff, appellee James R. McIsaac.

Before CAMPBELL, Chief Judge, and BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

Defendant-appellant Wise Company, Inc., appeals from a jury verdict and judgment against it. Wise manufactured a helmsman's chair used in the pilothouse of a commercial fishing vessel, the SETTLER, which was owned by defendant-appellee Didriksen Fishing Corporation.

The accident giving rise to the law suit happened as follows. On September 25, 1981, plaintiff-appellee James R. McIsaac,[1] a seaman on the vessel, was conducting his wheel watch from the helmsman's chair. The chair was elevated to enable its occupant to look out the window and observe the instrument panel in the wheelhouse. The seat swiveled atop a thirty-inch post by means of an aluminum bracket device, known as a spider, which was connected to the base of the seat and fit over the chair post. While McIsaac sat in the chair, the boat rode up and down long rolling swells. Since the helmsman's chair was not installed with a footrest, he maintained comfort and stability by putting his feet against the companionway bulkhead railing, which was about three feet off the deck. As the SETTLER began to roll down the top of a swell, the spider snapped and broke. McIsaac fell backwards in the seat onto the concrete and steel wheelhouse deck, landing directly on the point of his right elbow. McIsaac was in so much pain that the SETTLER's captain, Arne Olsen, turned the vessel around and headed back to New Bedford. McIsaac's injury was diagnosed as a severely fractured elbow with permanent damage to the joint.

McIsaac brought a complaint against Didriksen alleging negligence under the Jones Act, 46 U.S.C. § 688 (1985 Supp.), unseaworthiness under general maritime law, and maintenance and cure under maritime law. Along with its answer, Didriksen filed a third-party complaint against Wise seeking indemnification and/or contribution. Didriksen claimed that McIsaac's injury was caused by Wise's negligence and breach of warranty with regard to the manufacture and sale of the helmsman's chair. Subsequently, McIsaac amended his complaint adding counts against Wise for negligent design, manufacture and warning, and breach of warranty.

Following a ten-day trial, the jury found both Didriksen and Wise negligent; Didriksen was held 80% liable and Wise 20% liable. Didriksen also was held liable for the unseaworthiness of the SETTLER. Wise was found not to have breached its warranty of merchantibility. The jury awarded McIsaac $822,000 in damages.

Wise's appeal focuses on three issues: (1) the sufficiency of the evidence to support the finding of negligence, (2) the consistency of the jury's verdict, and (3) the question of damages.

*Wise's Negligence Liability*

Wise claims that there is insufficient evidence to support the finding of 20% negligence assessed against it by the jury. Wise asserts that Didriksen was entirely at fault because it negligently installed the helmsman's chair, modified the chair in a manner that rendered it far more dangerous than it was originally, and continued to use the chair after realizing it was unsafe for use aboard the SETTLER.

We must uphold the jury's verdict unless the facts and inferences, viewed in the light most favorable to McIsaac, "point so

---

**1.** The pleadings and briefs spell plaintiff's name three different ways. We follow the spelling as    plaintiff gave it at trial.

strongly and overwhelmingly in favor of" Wise that a reasonable jury could not have found it negligent at all. *Chedd-Angier Production v. Omni Publications Int.*, 756 F.2d 930, 934 (1st Cir.1985); *Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986, 989–90 (1st Cir.1978).

■ Wise has not persuaded us that the facts of this case should conclusively bar fair-minded jurors from finding it negligent. There was ample evidence to support either of two alternative theories of liability presented by McIsaac: negligent design and negligent warning. Dr. Robert Greif, an expert witness, presented testimony substantiating the theory that Wise had negligently designed the spider which helped support the helmsman's chair whose collapse caused McIsaac's injury. Greif discussed the results of a series of calculations designed to test the spider's capacity to withstand the types of stresses it would be subject to on an ocean-going commercial fishing vessel.[2] His calculations indicated that the spider was fit for use in a pleasure boat, but he concluded that it was "not suitable" for use aboard a vessel like the SETTLER. On cross-examination by Wise's counsel, Greif affirmed that the spider collapsed "because it was on a commercial fishing vessel and was undergoing the stress and strain of that type of use...." Greif also noted that the spider's capacity to absorb stress would have increased had it been double-gusseted, like other Wise spiders, rather than single-gusseted. In addition, defendant's expert, Dr. Clifford Goudey, concurred with Greif's assessment that the spider was not suitable for use on a commercial fishing vessel. The president of Wise admitted on the stand that the spider had never been tested and was not made to be used on a commercial fishing vessel.

■ Wise argues that the spider's unsuitability for commercial vessel use cannot be equated with negligent design, since the product was not designed to be used by commercial vessels. The focus in negligent design cases, however, "is not on how the product is meant to function, but on whether the product is designed with reasonable care to eliminate avoidable dangers." *Uloth v. City Tank Corp.*, 376 Mass. 874, 384 N.E.2d 1188, 1191 (1978). A manufacturer must "anticipate the environment in which its product will be used, and ... design against the reasonably foreseeable risks attending the product's use in that setting." *Bernier v. Boston Edison Co.*, 380 Mass. 372, 403 N.E.2d 391, 395 (1980); *Back v. Wickes Co.*, 375 Mass. 633, 378 N.E.2d 964, 969 (1978). Wise made the helmsman's chair and spider in question available to the entire marine market, commercial and noncommercial. It was, therefore, obliged to design its product in a manner which could be used safely by all sectors of that market. The jury was presented with ample evidence showing that the spider was not designed so that it could be safely used in the commercial fishing sector of the marine market. Wise could have cautioned that sector of the marine market against using the spider, but it did not.

■ Indeed, even if we were to accept Wise's contention that unsuitability for a particular use cannot be equated with neg-

---

**2.** Wise argues that Dr. Greif's stress calculations must be discarded since they were premised on an assumption that the spider was constructed of 319 aluminum. Greif's assumption was based on Wise's answer to Didriksen's interrogatory, signed by Wise's president and read into evidence by McIsaac, identifying the type of metal used in the spider as 319 aluminum. After Greif testified, Charles Hardy, a Wise engineer, stated that Wise "generally" bought aluminum ingots from the same supplier and the type of aluminum was "traditionally" 356. On cross-examination, Hardy affirmed that the aluminum used on the spider in question was 356.

Hardy's testimony was the first and only indication in the litigation that the spider was made of any substance other than 319 aluminum. Wise produced no documentation supporting Hardy's testimony. The jury was free to disregard Hardy's statement and accept the earlier answer given by Wise's president. Moreover, we hesitate to permit Wise to benefit from a sworn statement made at trial by a company employee which contradicts an earlier sworn statement, properly relied upon by an expert witness, made by the company's president in response to an interrogatory.

ligent design, Wise's knowledge of the spider's inappropriateness for commercial use supports a finding of negligence based on a failure to warn. Wise does not argue that it did not know this particular helmsman's chair was unsuitable for commercial use. Instead, it avers that it had no duty to warn against such a use because it had no way of knowing that the chair and spider were being used on commercial vessels. We reject this argument. A seller or manufacturer of a product must "give adequate warning of unreasonable dangers involved in the use of which he knows or should know." *Schaeffer v. General Motors Corp.*, 372 Mass. 171, 360 N.E.2d 1062 (1977). Wise's president stated that he knew the chair and spider aboard the SETTLER were not made to be used on a commercial fishing vessel. The jury heard evidence that Wise made scant effort to limit the sale of such a chair to the noncommercial sector of the marine market. The 1983 Wise product catalog, issued shortly after McIsaac's injury, contained a warning that the products displayed were not to be used on commercial vessels; previous catalogs, including the one relied on by Didriksen, contained no such admonition. Thus, the jury had evidence regarding both the lack and feasibility of an adequate warning. We reject Wise's argument that the dangers of the spider and chair were so obvious as to eliminate the need for a warning as a matter of law. It was for the jury to determine whether a warning was needed. In short, there was sufficient evidence for fair-minded jurors to conclude that Wise should have exercised reasonable care by warning against the commercial use of the spider and helmsman's chair which caused McIsaac's injury.

*Verdict Consistency*

Wise argues that the jury's verdict must be reversed because of inconsistency. It avers that the jury's finding of negligence cannot be reconciled with its failure to find that Wise breached its warranty of merchantibility. In *Hayes v. Ariens Co.*, 391 Mass. 407, 462 N.E.2d 273 (1984), the Supreme Judicial Court of Massachusetts held

that a finding that defendant "did not breach its warranty necessarily imported a finding that the product, including the warning label, was reasonably safe, whereas the negligence finding necessarily imported a finding that it was not." *Id.* at 275, 391 Mass. 407. The court stated that a "defendant cannot be found to have been negligent without having breached the warranty of merchantibility." *Id.* Unable to discern the jury's reasoning, the court overturned the judgment and remanded for a new trial. Wise urges such a result is necessary here as well.

We note, initially, our "substantial reluctance to consider inconsistency in civil jury verdicts a basis for new trials." *Merchant v. Ruhle*, 740 F.2d 86, 91 (1st Cir.1984). A special verdict will be upheld if there is a view of the case which makes the jury's answers consistent. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); *Insurance Co. of North America v. Musa*, 785 F.2d 370, 377 (1st Cir.1986). Both Wise and McIsaac agree that Didriksen misused the helmsman's chair by negligently installing and modifying it, and by continuing to use it after recognizing its unsuitability for use on the SETTLER. In *Richard v. American Mfg. Co.*, 21 Mass.App. 967, 489 N.E.2d 214 (1986), the court reconciled a finding of negligence with a finding of no breach of warranty by noting that misuse of the product by the plaintiff was a complete defense to breach of warranty. *Id.* 489 N.E.2d at 215; *see also Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 446 N.E.2d 1033, 1041 (1983). The *Richard* court noted that "a finding of unreasonable use in a warranty count [does not] preclude[ ] a finding, on a negligence count, that the defendant's negligence was a proximate cause of the plaintiff's injuries." *Id.* 489 N.E.2d at 215–16 n. 2.

Wise contends that *Richard* is inapposite because it involved misuse by the plaintiff while the instant case involves misuse by a codefendant. It argues that only misuse by the plaintiff, rather than a joint tort-

feasor, can defeat a breach of warranty claim. This argument directly contradicts the position taken by Wise at trial. Wise specifically requested, and received, a jury instruction that misuse of the chair "by anybody" would vitiate the breach of warranty claim. Thus, the jury's verdict is consistent with the view of the law advanced by Wise at trial. We do not decide here whether misuse by a joint tortfeasor is a defense to a breach of warranty claim under Massachusetts law. The Massachusetts courts are the ones to resolve that issue. We are, however, loath to heed a party's claim of verdict inconsistency when the verdict entirely comports with the view of the law advanced by that party to the trial judge. *See Merchant v. Ruhle*, 740 F.2d at 91.

Moreover, Wise would not be entitled to a reversal even if we found that the jury's verdict was inconsistent, since it failed to make a timely objection to the alleged inconsistency. Wise did not raise the issue of verdict inconsistency until eight days after the jury was discharged. Wise contends it had no basis for anticipating an inconsistent verdict. This argument strains credulity. Wise asked for jury instructions which portended the alleged inconsistency. During that same discussion, McIsaac's counsel expressly raised the topic of verdict inconsistency. The jury interrupted its deliberations for a clarification of the differences between the negligence and the breach of warranty claims asserted against Wise. After the jury returned with its decision, Judge Zobel stated on the record that she had paused before reading the verdict to assure that it was consistent.

■ Under these circumstances, we reject Wise's explanation that it should be excused from failing to make a timely objection because it could not anticipate potential inconsistency. The mere fact that the jury's verdict would be in the form of special answers should have been enough to alert counsel to potential inconsistency. As we stated in *Skillin v. Kimball*, 643 F.2d 19, 20 (1st Cir.1981):

Appellant thus was on notice that the special procedures of Rule 49—with their known potential for inconsistency—were to be the order of the day. With this notice should have come the knowledge that the only efficient time to cure these possible problems of inconsistency would be after the jury announced the results of its deliberations and before it was excused.

Given the ample circumstances portending possible verdict inconsistency, we hold that Wise waived the issue by failing to object after the verdict was read and before the jury was discharged. To decide otherwise would countenance "agreeable acquiescence to perceivable error as a weapon of appellate advocacy." *Merchant v. Ruhle*, 740 F.2d at 92.

*Damages*

The issue of damages cannot be understood without setting forth the procedural events leading to the final judgment.

The jury awarded McIsaac $822,000 in damages. In answers to special interrogatories, it determined that Didriksen was 80% responsible for McIsaac's injuries, and that Wise was 20% responsible. The jury also awarded prejudgment interest at a 2% rate.

Wise filed post-trial motions for remittitur, a new trial and judgment notwithstanding the verdict. Didriksen brought a motion for remittitur. On August 2, 1985, the district court ordered a new trial on the damages question "because the jury's verdict was based on improperly admitted evidence and is excessive." Approximately two months after the court's order for a new trial on damages, McIsaac and Didriksen reached a settlement agreement which provided that Didriksen pay McIsaac $406,-500, a sum that represented 49.45% of the damages awarded by the jury. On October 16, 1985, the district court approved the settlement. That same day, the court heard arguments on McIsaac's motion to reconsider and revoke the order for a new trial on damages. On December 4, 1985, the court revoked its order for a new trial on damages, holding that a resolution of

the liability issues by this court prior to any retrial on damages would be "both efficient and just." The court then entered judgment for McIsaac against Wise in the amount of $714,996.19 which included prejudgment interest at the rate of 12%.[3]

We turn to the issues raised by the unique procedural stance of the case. The first issue, the use of 12% interest, is the easiest. The court obviously made a mistake in using a 12% interest rate. In its order revoking the new trial order and entering judgment for the plaintiff against Wise, the court stated: "The jury returned a verdict on special questions finding both defendants liable and awarding damages in the amount of $822,000 plus prejudgment interest at the rate of 12% per annum." The jury, however, in answer to interrogatory 8 awarded prejudgment interest at the rate of 2%, not 12%. Indeed, interrogatory 8 states: "Please note that the rate of interest may be any figure between and including 0% and 10%."

The next issue is more difficult: whether the district court acted properly in following the course it did. A motion for a new trial on the grounds of excessive damages is addressed to the discretion of the trial court, and may be reversed only for an abuse of that discretion. *Sprague v. Boston and Maine Corp.*, 769 F.2d 26, 28 (1st Cir.1985); *Stafford v. Perini Corporation*, 475 F.2d 507, 512 (1st Cir.1973). Similarly, the trial court also has discretion to revoke its order for a new trial and reinstate the judgment. *Gallimore v. Missouri Pacific Railroad Co.*, 635 F.2d 1165, 1171 (5th Cir. Unit A, 1981); 6A J. Moore, J.D.; Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 59.13[2] at 59–298 (2d ed. 1986).

The question, then, is whether the district court abused its discretion in ordering a new trial on damages and subsequently revoking that order. The court's order for a new trial was based on a finding that "the jury's verdict was based on improperly admitted evidence and is excessive." Based on our examination of the record, we are loathe to find this assessment erroneous, either as a matter of law as to the evidence or clearly so as to damages. Given a trial court's discretion in denying and granting new trials, we must affirm the order for a new trial on damages.

■ The reversal of that order, however, is another matter. If the district court had stated that, after reconsideration, it had decided that evidence had not been improperly admitted,[4] or that the damages were not excessive, we would probably find that there was no abuse of discretion. Reassessment of its prior reasons for a new trial was not, however, what prompted the court to revoke its previous order. The court stated:

> The defendant, The Wise Company, Inc., also by motion for reconsideration of the denial of certain of its motions raises a number of issues concerning liability as well as damages. *A resolution of these issues prior to any retrial is both efficient and just.* Accordingly, the plaintiff's motion for reconsideration is allowed and the order granting a new trial on damages is revoked. [Emphasis added.]

The reason, therefore, for the revocation order was so that judgment could be entered and the liability issues appealed. We must admit that the district court has ef-

---

**3.** The court arrived at this amount as follows. It added to the verdict of $822,000 prejudgment interest computed at a 12% annual rate from October 27, 1982, the date McIsaac filed his complaint through October 6, 1985, the date of approval of the Didriksen settlement. This prejudgment interest amounted to $292,903.26. There was also added to the verdict prejudgment interest at 12% on $415,500 which represented the difference between the verdict award of $822,000 and the settlement of $406,500 from October 17, 1985, the settlement date, to the date of entry of judgment, December 4, 1985. This prejudgment interest sum was $6,592.93. There was then deducted from the sum of the verdict and prejudgment intererst awards, $1,121,-496.19, the settlement amount of $406,500, resulting in the judgment figure of $714,996.19.

**4.** This was a close question. Although not pinpointed by the district court, the evidence, as we understand it, concerned the computations used by plaintiff's expert to determine future loss of earnings.

fectively circumvented the strictures against interlocutory appeals. It was the settlement between plaintiff and Didriksen that gave it the opportunity, of which it took full advantage, to do so. We have no choice but to find that the district court abused its discretion in revoking its order for a new trial and entering judgment against Wise in the amount that it did.

■ The final issue is the effect of the settlement. Wise has acknowledged throughout the litigation that the suit against it is governed by Massachusetts tort liability principles. It cannot, therefore, escape the consequences of the principle of joint and several liability, which render it liable for one hundred percent of the verdict amount in excess of the Didriksen-McIsaac settlement. Wise argues, however, that its right of contribution from Didriksen should not be extinguished since the settlement was reached and approved after the jury had rendered its verdict establishing the liability of the respective defendants. Massachusetts law provides that a tortfeasor who settles with the plaintiff in good faith is discharged from all liability for contribution to any other tortfeasor. Mass.Gen.Laws Ann. ch. 231B, § 4 (West 1986). The Massachusetts Supreme Court has held that a settling tortfeasor's liability for contribution is not extinguished if the settlement is reached *after entry of judgment. Bishop v. Klein,* 380 Mass. 265, 402 N.E.2d 1365, 1371 (1980). The court stated that ch. 231B, § 4 "clearly establishes that entry of judgment ... fixes a defendant's right of contribution." *Id.* It is not our province to interpret the language of *Bishop v. Klein* more broadly than its clear meaning. The Didriksen-McIsaac settlement was reached after the jury rendered its verdict but before entry of judgment. We hold, therefore, that since Didriksen settled before entry of judgment, its liability for contribution to Wise was extinguished. The district court's approval of the settlement did not impair Wise's right of contribution, since such a right had not yet been fixed. Accordingly, in the new trial on damages, Wise shall be one hun-

dred percent liable for damages in excess of $406,500.

*Affirmed in part; Reversed in part. Remanded.*

Since both parties prevailed on appeal, no costs are awarded.