Otis AUSTIN, Plaintiff, Appellee,

v.

LINCOLN EQUIPMENT ASSOCIATES, INC., Defendant, Appellee.

Appeal of GARLOCK EQUIPMENT CO., Defendant.

Nos. 89–1272, 89–1604.

United States Court of Appeals, First Circuit.

Heard Sept. 5, 1989.

Decided Nov. 7, 1989.

Jean Seaburg, Milwaukee, Wis., with whom James E. Olds, Ltd., Bloomington, Minn., was on brief for appellant.

William A. Filippo, for plaintiff-appellee.

Before BOWNES, BREYER and FAIRCHILD [*], Circuit Judges.

BOWNES, Circuit Judge.

In this strict product liability diversity action, defendant-appellant Garlock Equipment Company appeals from an order of the District Court of Rhode Island denying the company's motions for a directed verdict, judgment notwithstanding the verdict, or a new trial.

## I. BACKGROUND

Plaintiff-appellee Otis Austin, a roofer, suffered injuries when he fell off a roof while using a power roof sweeper manufactured by Garlock. The accident occurred as Austin was sweeping a flat roof on a building in Providence, Rhode Island. He had made two laps around the perimeter of the roof when he stopped the machine approximately two to five feet from the roof's edge to add fuel. When Austin restarted the sweeper it bucked backwards against him and he lost his balance and fell off the roof. He severely injured his back, left ankle and right wrist.

Austin sued Garlock Equipment Company as manufacturer and Lincoln Equipment Associates, Inc. as seller of the sweeper. Plaintiff alleged that the sweeper was defective because its brush and wheel clutches failed to engage simultaneously due to a poorly designed interlock mechanism. After the evidence closed, the court submitted six questions to the jury, including the following:

1. Do you find Garlock Equipment Company strictly liable?

Yes————
No————.

2. Do you find Lincoln Equipment Associates, Inc. strictly liable?

Yes————
No————.

The jury found Garlock strictly liable and Lincoln not liable. It also found that plaintiff had not assumed the risk of his injuries in operating the sweeper but that he was 60% negligent. No general verdict was given. The jury calculated Austin's damages as $400,000. Reducing the figure to take account of plaintiff's own negligence, the court awarded him $160,000.

Although Garlock had moved for a directed verdict at the close of all the evidence, it did not object to the jury's verdict before the jury was dismissed. Nine days later Garlock moved for judgment notwithstanding the verdict or, in the alternative, for a new trial because of inconsistency in the jury's verdict. After a hearing, the district court denied the company's motions. Garlock raises two issues on appeal: 1) whether it should have prevailed as a matter of law and 2) whether inconsistency within the jury's verdict requires a new trial.

## II. STRICT LIABILITY IN RHODE ISLAND

The Rhode Island Supreme Court has recently reviewed comparative negligence in a strict liability context. The court stated:

> In 1971 the Legislature abolished the all-or-nothing bar to recovery under contributory negligence and adopted a "pure" comparative negligence approach. P.L. 1971, ch. 206, § 1 (codified at G.L.1956 (1985 Reenactment) § 9–20–4) [footnote omitted]. That same year this court adopted the theory of strict liability promulgated in Restatement (Second) Torts § 402A (1965). *See Ritter v. Narragansett Electric Co.,* [109 R.I. 176], 283 A.2d 255 (R.I.1971). We later held in *Fiske v. MacGregor, Div. of Brunswick,* 464 A.2d 719 (R.I.1983), that comparative

* Senior Judge of the Seventh Circuit, sitting by designation.

negligence principles apply to claims brought under strict liability and implied warranty theories. *Id.* at 726–29. In *Fiske* we further alluded to the availability of assumption of risk in products liability actions. *Id.* at 729.

*Swajian v. General Motors Corp.*, 559 A.2d 1041, 1044 (R.I.1989) (holding evidence relating to automobile safety belt use or nonuse irrelevant in strict product liability action and inadmissable on issues of comparative fault and proximate cause).

Section 402A of the Restatement provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In adopting the Restatement formulation, the Rhode Island court stated that strict liability in tort contemplates that there must be a defect in the design or the manufacture of a product that makes the product unsafe for its intended use. *Ritter v. Narragansett Elec. Co.*, 109 R.I. 176, 283 A.2d 255, 262 (1971) (stove); *see also Fiske v. MacGregor, Div. of Brunswick*, 464 A.2d 719, 723 (R.I.1983) (football helmet). In *Thomas v. Amway Corp.*, 488 A.2d 716 (R.I.1985), the court extended strict liability to cover cases in which the manufacturer failed to warn of its product's dangerous propensity. *Id.* at 722 (liquid soap). The court limited the failure-to-warn theory, however, by ruling that a seller need only warn of those dangers that are reasonably foreseeable and knowable at the time of marketing. *Id.; see also Castrignano v.* *E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 782 (R.I.1988) (prescription drug).

Before addressing defendant's contentions on appeal, we look to see whether or not plaintiff established a prima facie case for strict product liability. The plaintiff has the burden of proving a defect in the product and that his or her injury was proximately caused by this defect. *Thomas*, 488 A.2d at 722. Rhode Island uses a consumer expectation test to determine whether a product is defective under § 402A. *Castrignano*, 546 A.2d at 779 (R.I.1988). "This approach seeks to protect the consumer or user who was unaware of the danger involved in using a product in a way that it was intended to be used." *Id.* Under this test, the term "unreasonably dangerous" means that "the defect in the product establishes a strong likelihood of injury to the user or consumer thereof." *Id.* (quoting *Ritter*, 283 A.2d at 263).

Applying this standard, we find that Austin produced evidence from which it could be found that the sweeper was unreasonably dangerous when it left Garlock's hands. Austin's expert witness testified that the use of a spring pin in the interlock mechanism between the brush and wheel clutches was a poor design. The purpose of the interlock mechanism was to ensure that the two clutches engaged simultaneously, thereby preventing the machine from moving backward, as it would do if only the brush were engaged. Since a sudden backward motion by the sweeper could upset a roofer's balance whether he was near the edge of a roof or not, the design and subsequent failure of the clutch interlock mechanism could reasonably be found to be a defect under Section 402A of the Restatement.

The next element of proof is causation. A plaintiff must prove that the defect in the product was a proximate cause of his or her injury. *Thomas*, 488 A.2d at 722. The record shows that Austin was standing on a flat roof parallel to the roof's edge at a distance of two to five feet from the edge when he restarted the machine. He testified that the sweeper jumped back a foot and caught him off guard so that he fell

over the roof's edge. It could reasonably be found that the proximate cause of Austin's accident was the bucking motion of the Garlock sweeper due to a failure of the brush and wheel clutches to engage simultaneously.

## III. MOTIONS FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT

Garlock contends that any liability on its part for a defective product is defeated by plaintiff's assumption of the risk and misuse of the sweeper, and that the judge should have directed a verdict in its favor as a matter of law.

On a motion for a directed verdict or judgment notwithstanding the verdict, the trial judge must view all the evidence and inferences flowing therefrom in the light most favorable to the non-moving party. Such a motion should be granted only if, as a matter of law, no conclusion but one can be drawn. In reviewing the trial court's decision, we are obliged to look at the evidence in the same manner. *Kuras v. International Harvester Co.*, 820 F.2d 15, 17 (1st Cir.1987); *Goldstein v. Kelleher*, 728 F.2d 32, 39 (1st Cir.1984); *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 17 (1st Cir.1983).

### A. Assumption of the Risk

■ Garlock argues that Austin assumed the risk by using a machine that he knew to be "awkward" at a precipitous location when the availability of hand brooms and shovels provided a safer alternative. To warrant a directed verdict or judgment notwithstanding the verdict premised on plaintiff's assumption of the risk, Garlock must prove conclusively that Austin knew about the existence of a danger, appreciated its unreasonable character, and then voluntarily exposed himself to it. *Drew v. Wall*, 495 A.2d 229, 231 (R.I. 1985). It is not Austin's exercise of care but his voluntary acceptance of the risk which is at issue. "The standard for determining whether a plaintiff voluntarily encountered a risk is subjective; therefore, we must look to the record to ascertain what this particular individual in fact saw, knew, understood, and appreciated." *Id.*

There is no doubt that Austin understood the danger inherent in working on a roof. A roofer inevitably takes chances by working atop buildings. Austin had seen two co-workers fall to their deaths from rooftops. The deaths were not related to the use of a sweeper. What would have to be proven in order for defendant to prevail on its motions is that Austin appreciated the specific danger of the power sweeper knocking him off balance, and proceeded in the face of that danger. *Cf. Iadevaia v. Aetna Bridge Co.*, 120 R.I. 610, 389 A.2d 1246, 1250 (1978) (plaintiff did not assume specific risk of serious back injury by continuing to operate backhoe to break up cement).

As an employee of a roofing company, Austin's job was to sweep gravel into rows so that other workers could remove it with hand brooms and shovels. Austin testified that he had used the Garlock sweeper many times and found that each time he started it the machine exerted some backward pressure, but that he did not know the machine could jump back a foot, as it did when he started it the second time. Although there was a warning label on the sweeper which cautioned against using the machine within ten feet of the edge of a roof, Austin stated that he had never read the label nor received any instructions on operating safety.

Viewing the record in the light most favorable to the plaintiff, there is at least a reasonable inference that Austin did not appreciate the risk involved in starting the sweeper. Therefore, we find that the trial judge properly submitted the question of plaintiff's assumption of the risk to the jury.

### B. Misuse of the Product

■ Defendant also contends that Austin's act of starting the sweeper two to five feet from the roof's edge was a misuse of the product because the machine bore a label which read:

!CAUTION!

## DO NOT OPERATE WITHIN TEN FEET OF EDGE OF ROOF.

Garlock argues that the use of a product in a manner contrary to warnings given by the manufacturer is "misuse" which breaks the chain of causation between any defect and the injury. When a plaintiff's injuries result from his misuse of a product, strict liability does not attach because a product is not regarded as defective. Restatement (Second) Torts, § 402A, comment h at 351.[1] Misuse is use of a product for a purpose neither intended nor foreseeable by the manufacturer or supplier. *Williams v. Brown Mfg. Co.*, 45 Ill.2d 418, 261 N.E.2d 305, 309 (1970) (subsequently overruled as to effect but not definition of misuse, *see Coney v. J.L.G. Indus., Inc.*, 97 Ill.2d 104, 73 Ill.Dec. 337, 454 N.E.2d 197 (1983)); *accord Ritter*, 283 A.2d 255; *Turcotte v. Ford Motor Co.*, 494 F.2d 173 (1st Cir.1974) (under Rhode Island law "intended use" encompasses foreseeable consequences of normal use of a product).

It is undisputed that Austin was attempting to use the sweeper for its intended purpose of sweeping gravel. Therefore Austin did not misuse the product. Rather, the question is whether the plaintiff's use of a product for a normal purpose, but in a careless manner, has the same effect on the defendant's liability as does misuse. Defendant argues that it does where a warning is provided as to a particular manner of using a product. Garlock relies on comment j to section 402A of the Restatement (Second) Torts which states in pertinent part:

> Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

*Id.* at 353. Defendant cites two cases in which a plaintiff's use of a product in a manner contrary to instructions and warnings given by the manufacturer was held to

be "misuse" freeing the manufacturer from strict liability. In *Procter & Gamble Manufacturing Co. v. Langley*, 422 S.W.2d 773 (Tex.Civ.App.1967) the plaintiff used a home permanent solution to wave her hair, but failed to follow instructions for making a test curl and disregarded a warning to stop if hair showed signs of damage. In *Kay v. Cessna Aircraft Co.*, 548 F.2d 1370 (9th Cir.1977), an airplane crashed when the pilot attempted to take off without making routine safety checks which were spelled out in detail in the owner's manual.

Neither comment j nor these cases supports defendant's argument. In the present action, there was evidence from which it could be found that the sweeper was not safe for use even if the warning was followed. Following the warning would not have protected Austin from the erratic motion of the sweeper due to the defective clutch interlock mechanism; the warning mentioned nothing about the machine's propensity to buck. There was nothing magic about the ten-foot zone. Austin could just as easily have been knocked off balance and hurt himself while using the sweeper in the middle of the roof. He could have fallen on a sharp object or into hot roofing tar. Austin's proximity to the roof's edge compounded the danger posed by the machine, but his conduct does not relieve defendant from strict liability for a defect in the sweeper. A warning only relieves a manufacturer or supplier from strict liability if the product bearing such warning "is safe for use if it is followed." Restatement (Second) Torts, § 402A, comment j at 353. If a product is unsafe regardless of whether the user has followed a manufacturer's warning, the user's careless failure to do so is simply contributory negligence. *See* D. Noel, *Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk*, 25 Vand.L.Rev. 93, 100–103 (1972). *See also Ford Motor Co. v. Matthews*, 291 So.2d 169 (Miss.1974); *Wheeler v. Sunbelt*

---

**1.** Comment h reads in part: "A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling ... the seller is not liable."

*Tool Co., Inc.*, 181 Ill.App.3d 1088, 130 Ill.Dec. 863, 537 N.E.2d 1332 (1989); *Dukes v. J.I. Case Co.*, 137 Ill.App.3d 562, 91 Ill.Dec. 710, 723, 483 N.E.2d 1345, 1358 (1985), *aff'd in part sub nom. J.I. Case Co. v. McCartin–McAuliffe Plumbing and Heating, Inc.*, 118 Ill.2d 447, 114 Ill.Dec. 105, 516 N.E.2d 260 (1987).

As discussed above, there was evidence that defendant's product was defective and that the defect caused Austin's injuries. There was no evidence of misuse, that is, use of the sweeper for a purpose neither intended nor foreseeable. The district court did not err in denying Garlock's motions based on misuse.

## IV. MOTION FOR A NEW TRIAL

■ Defendant claims in the alternative that a new trial must be held due to irreconcilable inconsistency in the jury's verdict. In answers to special questions submitted to it by the trial judge, the jury found the manufacturer of the machine strictly liable but found the seller not liable. Absent special circumstances not present here, when a manufacturer is found liable in strict liability the seller is also liable. According to Garlock, the verdict indicates that the jury was considering the relative fault of the two companies in putting the product on the market rather than the safety of the machine for its intended use, which is the proper question in determining strict product liability.

We do not reach the merits of this argument because of defendant's failure to make a timely objection to the alleged inconsistency. A party waives the issue of inconsistency if it fails to object after the verdict is read and before the jury is dismissed. *McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 134 (1st Cir.1987). Particularly where the circumstances portend possible verdict inconsistency, the only efficient time to cure the problem is after the jury announces its results and before it is excused, and it is the responsibility of counsel to make a timely objection. *Id.* at 134; *Fernandez v. Chardon*, 681 F.2d 42, 58 (1st Cir.1982); *Skillin v. Kimball*, 643 F.2d 19, 20 (1st Cir.1981).

Prior to charging the jury, the court gave the parties the opportunity to review its instructions. The court also allowed time for motions after the jury announced its verdict and before the jury was dismissed. The use of special interrogatories should have put the parties on notice that there might be an inconsistent verdict. "The mere fact that the jury's verdict would be in the form of special answers should have been enough to alert counsel to potential inconsistency." *McIsaac*, 809 F.2d at 134. Garlock did not raise the issue of verdict inconsistency until nine days after the verdict was rendered; it can not now obtain a new trial on the ground that the jury arrived at an inconsistent verdict. "To decide otherwise would countenance 'agreeable acquiescence to perceivable error as a weapon of appellate advocacy.'" *Id.* at 134 (quoting *Merchant v. Ruhle*, 740 F.2d 86, 92 (1st Cir.1984)). See *Merchant v. Ruhle*, 740 F.2d at 89–91, for a discussion of why we and other courts are reluctant "to consider inconsistency in civil jury verdicts a basis for new trials." *Id.* at 91.

## V. CONCLUSION

Since we find that questions of fact existed concerning defendant's claims of assumption of the risk and misuse of the sweeper, and since defendant failed to object to the verdict before the jury was discharged, we affirm the district court's denial of Garlock's motions.

Affirmed.