UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1244

ANGEL TOUCET,

Plaintiff, Appellee,

v.

MARITIME OVERSEAS CORP.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gilberto Gierbolini, U.S. District Judge]

Before

Stahl, Circuit Judge,

Campbell, Senior Circuit Judge,

and Skinner,* Senior District Judge.

Andrew H. Quinn with whom Dante Mattioni, Francis X. Kelly,

Mattioni, Mattioni & Mattioni, Ltd., and Antonio Jimenez Miranda were

on brief for appellant.
Harry A. Ezratty for appellee.

April 20, 1993

* Of the District of Massachusetts, sitting by designation.

SKINNER, Senior District Judge

Plaintiff Angel Toucet, a seaman, brought this action

against his employer, Maritime Overseas Corporation, seeking

damages for a back injury suffered aboard the defendant's

vessel, the Overseas Alaska. Toucet alleged negligence

under the Jones Act, 46 U.S.C. 688, and unseaworthiness

under general maritime law. After trial, a jury returned a

special verdict in Toucet's favor on the Jones Act count,

but did not find the Overseas Alaska to be unseaworthy. The

trial court denied Maritime's motions for judgment n.o.v.

and a new trial or, in the alternative, for remittitur of

the $75,000 verdict.

On appeal, Maritime contends that the trial court erred

in denying Maritime's motions for judgment n.o.v. and a new

trial because the jury's finding of negligence is

irreconcilably inconsistent with its rejection of the claim

of unseaworthiness. Maritime also asserts that the trial

court erred by allowing Toucet's counsel to pose a

hypothetical question that was improperly based on facts not

in evidence and by denying Maritime's motion for remittitur.

2

BACKGROUND

We briefly review the evidence developed at trial in

the light most favorable to Toucet. See Transnational Corp.

v. Rodio & Ursillo, Ltd., 920 F.2d 1066, 1068 (1st Cir.

1990).

On August 27, 1987, while the Overseas Alaska was in

the port of New Orleans, the crew was advised that the

vessel's cargo tanks would be bottom washed. Seeking to

avoid the cleaning operation, Toucet and two other crew

members requested leave to quit the ship. Toucet told the

boatswain that after working approximately twelve hours

consecutively he was too exhausted to participate in the

tank cleaning. Toucet's request was denied because the

ship's union agreement required crew members to provide 24

hours advance notice before quitting.

At approximately 5:30 p.m., the cleaning process, which

is commonly called "butterworthing," began. Several

witnesses testified that butterworthing is hard work,

requiring several men to complete the task. On this

particular day, the Overseas Alaska's crew was divided into

two six-hour shifts, each consisting of four men. Toucet,

who was now working overtime, was assigned to the first

shift. While the Overseas Alaska's union agreement required

3

a minimum of three men to perform the task, testimony at

trial revealed that butterworthing was ordinarily performed

on other ships by more than four men.

The term butterworthing refers to the equipment (a

butterworth machine) used to clean the tanks. During trial,

the butterworth was described as a brass cylindrical device,

weighing approximately 30 pounds. The butterworth is

attached to the end of a flexible, hard rubber hose that has

a 10-inch diameter and weighs approximately 100 pounds. To

accomplish bottom washing, the crew lowers the hose and

butterworth approximately 30-40 feet into the openings of

each tank. Once in the tank, hot water is pumped through

the hose into the butterworth. The water pressure causes

the head of the butterworth to spin and, while the head

spins, water is forced out of two release valves located on

the side of the butterworth. Upon release from the

butterworth, the hot water is directed against the wall and

floor panels of the cargo tanks at approximately 90 p.s.i.

pressure. Once a tank is cleaned, the crew pulls the

butterworth and hose out of the opening and moves or

"shifts" the equipment to the next opening. Typically, the

removal process is accomplished by the seamen pulling on the

hose in unison.

4

Toucet testified that he was injured while removing the

butterworth and hose from one of the Overseas Alaska's

tanks. More specifically, Toucet testified that the deck

engine utility (DEU), who was one of the crew members

assigned to assist in the butterworthing, was inexperienced

and inept at the task. As a result of the DEU's

inexperience, the hose was allowed to slacken on several

occasions. Toucet and at least one other team member

complained to the boatswain that the DEU's inexperience was

making the butterworthing more difficult and Toucet again

reported that he was exhausted. The boatswain replied that

he could not do anything because the rest of the crew was

sleeping. A short time after complaining, Toucet testified

that he was jolted by grasping at the slipping hose and that

he felt his back crack when he attempted to stand erect.

The case was submitted to the jury on both the Jones

Act and general maritime law claims. With regard to

unseaworthiness, Toucet alleged that the Overseas Alaska was

unseaworthy in relation to the butterworthing operation

because: (1) the number of seamen provided to complete the

task was inadequate, and (2) one of the seamen who was

assigned to the task was inexperienced and inept. Toucet's

negligence claim under the Jones Act was similarly based on

5

Maritime's failure to provide an adequate and experienced

crew for the butterworthing operation. In addition, Toucet

alleged that Maritime was negligent by requiring him to

participate in the butterworthing operation despite his

earlier complaint of exhaustion.

DISCUSSION

A. Alleged Verdict Inconsistency

When a special verdict form results in apparently

conflicting findings, a court has a duty under the Seventh

Amendment to harmonize the answers if at all possible under

a fair reading. Atlantic & Gulf Stevedores, Inc. v.

Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962); Santiago-

Negron v. Castro-Davila, 865 F.2d 431, 443 (1st Cir. 1989)

(citing Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108,

119 (1963)).

Maritime contends that the jury's answers on the

negligence and seaworthiness questions cannot be harmonized

because both claims are grounded on the same underlying

factual allegations -- that the crew was both inadequate and

too inexperienced to accomplish the butterworthing task. By

finding the Overseas Alaska to be seaworthy, Maritime argues

that the jury necessarily rejected Toucet's inadequate and

inexperienced assistance allegations. Maritime concludes,

6

therefore, that there was no basis for finding it negligent

and that the verdict must be set aside as irreconcilably

inconsistent.

We need not address the merits of this argument because

Maritime failed to make a timely objection to the alleged

inconsistency. In this circuit, a "party waives

inconsistency if it fails to object after the verdict is

read and before the jury is dismissed." Bonilla v. Yamaha

Motors Corp., 955 F.2d 150, 155-56 (1st Cir. 1992) (citing

Austin v. Lincoln Equip. Assocs., 888 F.2d 934, 939 (1st

Cir. 1989)); Peckham v. Continental Casualty Ins. Co., 895

F.2d 830, 836 (1st Cir. 1990) (citing McIsaac v. Didriksen

Fishing Corp., 809 F.2d 129, 134 (1st Cir. 1987)). This is

because the "only efficient time to cure the problem is

after the jury announces its results and before it is

excused, and it is the responsibility of counsel to make

timely objection." Austin v. Lincoln Equip. Assocs., 888

F.2d at 939.

We have carefully reviewed the entire record in this

case, including the clerk's minutes of the proceedings and

the docket sheet.1 It is apparent from the record that

1 Under Rule 10, the record on appeal properly includes
"[t]he original papers and exhibits filed in the district
court, the transcript of proceedings, if any, and a

7

Maritime failed to object to the verdict's asserted

inconsistency prior to the jury's discharge. (Clerk's

Minutes, Oct. 10, 1991; Docket Entry 71.) In fact,

Maritime did not raise the inconsistency issue until filing

its post trial motions on October 23, 1991 -- 13 days after

the jury was discharged and long after the optimum time for

curing any alleged defect. (Docket Entry 74.) While

Maritime omitted the portion of the transcript relating to

the reading of the verdict from its appendix,2 our review

on appeal is not limited to the materials submitted by the

parties. FED. R. APP. P. 30(a) ("The fact that parts of the

record are not included in the appendix, shall not prevent

the parties or the court from relying on such parts.").

Maritime's failure to object cannot be excused by its

inability to anticipate the jury reaching potentially

inconsistent findings. See McIsaac v. Didriksen Fishing

certified copy of the docket entries prepared by the clerk
of the district court . . . ." FED. R. APP. P. 10(a). Rule
10's scope reaches "'all papers presented to the district
court and filed in the record and all papers filed by the
district court itself.'" In re Arthur Andersen & Co., 621

F.2d 37, 39 (1st Cir. 1980) (quoting 9 JAMES W. MOORE ET
AL., MOORE'S FEDERAL PRACTICE 210.04[1]).

2 Maritime's failure to include the October 10, 1991
transcript in its appendix is particularly surprising since
the verdict, which was returned and read in open court on
that day, is the primary focus of the present appeal.

8

Corp., 809 F.2d at 134 (rejecting appellant's argument that

it could not have anticipated verdict inconsistency where

jury instructions and special verdict form served as

harbingers for inconsistency). The circumstances of this

case indicate that Maritime had ample opportunity to

"portend possible verdict inconsistency." Austin v. Lincoln

Equip. Assocs., 888 F.2d at 939. For instance, Maritime

should have been alerted by the use of the special verdict

form alone. See id. As we noted previously, "'[t]he mere

fact that the jury's verdict would be in the form of special

answers should have been enough to alert counsel to

potential inconsistency.'" Id. (quoting McIsaac v.

Didriksen Fishing Corp., 809 F.2d at 134).

In addition to the special verdict form, Maritime

should have been alerted to the potential inconsistency by

the jury instructions. See McIsaac v. Didriksen Fishing

Corp., 809 F.2d at 134. The court specifically instructed

the jury that the negligence and unseaworthiness claims were

"separate and independent" and that the plaintiff could

recover on one or both. (Appellant's App. at 753a and

760a.) In fact, the jury requested additional instructions

regarding the meaning of unseaworthiness. (Clerk's Minutes,

Oct. 10, 1991; Docket Entry 71.); see McIsaac v. Didriksen

9

Fishing Corp., 809 F.2d at 134 (counsel on notice of

potential inconsistency where jury interrupted deliberations

to inquire into differences between negligence and breach of

warranty claims).

Despite these obvious warning beacons, Maritime

remained silent while the verdict was read and the jury was

discharged. We decline to condone this "'agreeable

acquiescence to perceivable error as a weapon of appellate

advocacy.'" Id. (quoting Merchant v. Ruhle, 740 F.2d 86, 92

(1st Cir. 1984)).

While the timeliness issue was not addressed by either

party and consequently was not explored by the trial court,

"'[w]e are, of course, free to affirm a district court's

decision on any ground supported by the record even if the

issue was not pleaded, tried or otherwise referred to in the

proceedings below.'" Chamberlin v. 101 Realty, Inc., 915

F.2d 777, 783 n.8 (1st Cir. 1990) (quoting Norris v.

Lumbermen's Mut. Casualty Co., 881 F.2d 1144, 1151-52 (1st

Cir. 1989) (additional citations omitted)). This is

particularly appropriate here because the parties have had

sufficient opportunity to develop arguments relating to the

verdict's alleged inconsistency before both the trial court

and this court. See Papex Int'l Brokers, Ltd. v. Chase

10

Manhattan Bank, 821 F.2d 883, 885 (1st Cir. 1987). In

addition, Maritime's untimely objection is apparent from the

record and our determination can be made as a matter of law.

See Watterson v. Page, No. 92-1224, 1993 U.S. App. LEXIS

2029, at *14 n.3 (1st Cir. Feb. 9, 1993). Under these

circumstances, it is appropriate to affirm the trial court's

decision, even though the precise issue was neither raised

by the parties or addressed by the trial court. See id.

Accordingly, we hold that Maritime waived any potential

inconsistency in the jury's verdict as a basis for appeal by

failing to object before the jury was discharged.

In any case, there is no inconsistency between the

verdicts in this case. It is well recognized that claims

under the Jones Act and claims for unseaworthiness are

discrete claims. See, e.g., Usner v. Luckenbach Overseas

Corp., 400 U.S. 494, 498 (1971). While the evidence is

often congruent, or at least overlapping, this is not

necessarily so, and a number of cases demonstrate that a

single incident of negligence, such as the requirement that

a seaman work when he has reported that he was too fatigued

to do so, may occur without rendering the ship unseaworthy.

Borras v. Sea-Land Serv., Inc., 586 F.2d 881, 888 (1st Cir.

1978); Merchant v. Ruhle, 740 F.2d at 91; Simeon v. T. Smith

11

& Son, Inc., 852 F.2d 1421, 1433 (5th Cir. 1988), cert.

denied, 490 U.S. 1106 (1989); Gosnell v. Sea-Land Serv.,

Inc., 782 F.2d 464, 467 (4th Cir. 1986); Kokesh v. American

S.S. Co., 747 F.2d 1092, 1094 (6th Cir. 1984).

We also find that sufficient evidence was established

at trial to support the jury's finding of negligence. A

plaintiff's burden of proving causation under the Jones Act

is "featherweight". Leonard v. Exxon, 581 F.2d 522, 524

(5th Cir. 1978), cert. denied, 441 U.S. 923 (1979).

Liability exists if the employer's negligence contributed

even in the slightest to the plaintiff's injury. Santana v.

United States, 572 F.2d 331, 335 (1st Cir. 1977) (citing

Rogers v. Missouri-Pacific R.R. Co., 352 U.S. 500, 506

(1957)). Here, sufficient evidence was introduced to

support the jury's determination that Maritime was negligent

in requiring Toucet to continue working despite his claims

of exhaustion and inadequate assistance, and that this

negligence contributed to Toucet's back injury. Perez v.

Maritime Transport Lines, Inc., 661 F.2d 254, 254 (1st Cir.

1979) (employer negligent for not relieving the plaintiff

from duty despite the plaintiff's complaints of overwork and

inadequate assistance, and that negligence contributed to

the plaintiff's injury).

12

B. Improper Hypothetical Question

Maritime asserts that the trial court erred by allowing

the plaintiff's expert witness, Dr. Jaun Llompart, to answer

a hypothetical question that improperly assumed facts not in

evidence. Specifically, plaintiff's counsel asked Dr.

Llompart to assume, in part, that a hypothetical seaman was

injured after pulling a hose and butterworth out of 12 tank

openings. Maritime asserts that this assumption was

contrary to the evidence introduced at trial, which revealed

that Toucet was injured after only 4 tank openings were

cleaned.

While a hypothetical should include only those facts

supported by the evidence, Iconco v. Jensen Constr. Co., 622

F.2d 1291, 1301 (8th Cir. 1980), the record here indicates

that sufficient facts existed to support the challenged

hypothetical. Each numbered tank had twelve openings, six

on the port side and six on the starboard side.

(Appellant's App. at 48a; 154a-56a; 162a.) During direct

examination, Toucet testified that he and the rest of the

team lowered a total of six hoses into the first six

openings of tank number one, three on each side. Id. at

51a; 162a. After completing the first six openings, the

team proceeded to clean the remaining six openings of tank

13

number one in the same manner. Toucet testified that after

completing the butterworthing of tank number one he and the

team proceeded to the first opening of tank number two.

Toucet felt his back "crack" while working on tank number

two. On this record, we find that the factual assumptions

underlying the plaintiff's hypothetical were fully supported

by the evidence. Moreover, Federal Rules of Evidence 703

and 705 place the "full burden of exploration of the facts

and assumptions underlying the testimony of an expert

witness squarely on the shoulders of opposing counsel's

cross-examination." Smith v. Ford Motor Co., 626 F.2d 784,

793 (10th Cir. 1980), cert. denied, 450 U.S. 918 (1981).

During its cross-examination of Dr. Llompart, Maritime

elected not to explore any perceived discrepancies or

inconsistencies relating to the hypothetical, nor did

Maritime ever explicitly call the attention of court or

counsel to the discrepancy it now asserts.

In short, Maritime's assertion of error is without

merit. Accordingly, we affirm the trial court's ruling

admitting Dr. Llompart's answer to the hypothetical

question.

14

C. Remittitur

The final issue is the propriety of the trial court's

denial of Maritime's motions for a new trial on damages or,

in the alternative, for remittitur. Maritime alleges that

the jury's $75,000 damage award for what it characterizes as

a "BenGay back injury" is unreasonably excessive and

unsupported by the evidence.

We review the trial court's denial of Maritime's

motions for "manifest abuse of discretion." Joia v. Jo-Ja

Serv. Corp., 817 F.2d 908, 918 (1st Cir. 1987) (citing

Rivera v. Rederi A/B Nordstjernan, 456 F.2d 970, 975 (1st

Cir.), cert. denied, 409 U.S. 876 (1972)), cert. denied, 484

U.S. 1008 (1988). In challenging the jury's determination

of damages, Maritime assumes a heavy burden. Milone v.

Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988). This

court has previously observed that, "'[t]ranslating legal

damage into money damages . . . is a matter peculiarly

within a jury's ken.'" Id. (quoting Wagenmann v. Adams, 829

F.2d 196, 215 (1st Cir. 1987)). Accordingly, a jury's

judgment regarding the appropriate damage award is given

wide latitude and will be upheld so long as it does not

exceed "'any rational appraisal or estimate of the damages

that could be based on the evidence before the jury.'" Id.

15

(quoting Segal v. Gilbert Color Sys., 746 F.2d 78, 81 (1st

Cir. 1984)). In making this determination, we view the

evidence in the light most favorable to the plaintiff.

McDonald v. Federal Lab., Inc., 724 F.2d 243, 246 (1st Cir.

1984) (quoting Betancourt v. J.C. Penny Co., 554 F.2d 1206,

1207 (1st Cir. 1977)).

Cast in the appropriate light, we find that the jury's

assessment of Toucet's damages is within the "'wide range of

arguable appropriateness.'" Milone v. Moceri Family, Inc.,

847 F.2d at 40 (quoting Wagenmann v. Adams, 829 F.2d at

216). In calculating the amount of damages, the jury was

instructed to consider lost earnings, as well as pain and

suffering. With regard to lost earnings, the evidence

indicated that Toucet was unable to work for more than three

months after his injury. Although Toucet was pronounced

"fit for duty" by his doctor and attempted to resume work as

a seaman in December 1987, Toucet testified that he was

unable to remain on the job for more than a few days because

of his back injury. In terms of pain and suffering, Toucet

testified that, up until the time of trial, he continued to

suffer pain and discomfort attributable to his injury aboard

the Overseas Alaska, even though the injury occurred four

years earlier.

16

Under these circumstances, we conclude that the jury's

$75,000 judgment cannot be fairly characterized as "`grossly

excessive,'" "`inordinate'" or "`shocking to the

conscience'". See McDonald v. Federal Lab., Inc., 724 F.2d

at 246 (quoting Grunenthatl v. Long Island R.R. Co., 393

U.S. 156, 159 n.4 (1968)). Accordingly, we find no abuse of

discretion in the trial court's denial of Maritime's motions

for a new trial on damages or for remittitur.

CONCLUSION

The trial court's orders directing judgment to enter

according to the jury's verdict and dismissing Maritime's

post trial motions are AFFIRMED.
AFFIRMED.

17